CLARK (GONG BELL CO. v.). See Case No. 5,529.

CLARK (GREENOUGH v.). See Case No. 5,784.

─────────

## Case No. 2,823.

### CLARK v. HACKETT.

[1 Cliff. 269.][1]

Circuit Court, D. New Hampshire. May Term, 1859.[2]

BILL TO SET ASIDE SUPREME COURT JUDGMENT FOR FRAUD — JURISDICTION—CORROBORATION— AMENDMENTS—LIMITATION OF ACTIONS.

1. Circuit courts have no jurisdiction to review the judgments or decrees of the supreme court; and a circuit court for one circuit is equally destitute of authority to review a judgment or decree of a circuit court in another circuit; but semble, a judgment or decree of the supreme court, affirming a judgment or decree of a circuit court, may be reviewed in a circuit court, upon proof that both judgments or decrees were obtained by fraud.

[Cited in Glenny v. Langdon, 98 U. S. 24.]

2. Where fraud is charged in the bill, and positively denied in the answer, a decree cannot be pronounced for the complainant on the testimony of a single witness, without some corroboration either from the testimony of other witnesses, or from the circumstances proved in the case.

[See note at end of case.]

3. Under Act Cong. Aug. 19, 1841 [5 Stat. 446], limiting suits by or against assignees of bankrupts to two years after the cause of action accrued, a bill filed after two years cannot be regarded as an amendment to one for the same cause of action, filed before the expiration of the two years, but dismissed by the court.

This was a bill in equity, wherein the complainant sought to set aside and annul a certain decree of the supreme court of the United States of America, affirming on appeal a decree of the circuit court of the United States for the District of Columbia, and also to set aside the decree of the circuit court

───────

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in Clark v. Hackett, 1 Black (66 U. S.) 77.]

so appealed from and affirmed. Those decrees were made in a suit in equity, in which one Benjamin C. Clark and the present defendant were complainants, and Ferdinand N. Clark, then known as Ferdinand Clark, was respondent. In the published decisions of the supreme court, in the case of Clark v. Clark, 17 How. [58 U. S.] 315, it appears that the complainant prosecuted a claim against the republic of Mexico, for the unlawful seizure of the cargo of the schooner Louisiana, and that there was awarded to him therefor the sum of $86,-985.29 by the commissioners appointed under the treaty of April 11, 1839, with that republic.

After deducting some twenty per cent. as compensation to the agents employed in recovering the claim, there was left the sum of $69,429.14 as the amount in controversy in that suit. That award was made on the 15th of April, 1857, and on the 15th of May following Benjamin C. Clark, of Boston, filed a creditor's bill in the circuit court of the United States for the District of Columbia, claiming the fund for himself and other creditors of the respondent, who had taken the benefit of the bankrupt law on the 27th of March, 1843, in the district court of the United States for the district of New Hampshire.

On the 30th of the same May, W. H. Y. Hackett, the respondent in the present suit, and the then assignee in bankruptcy of the respondent in that suit, filed his bill in that court, also claiming the entire fund for the purpose of distribution among the creditors of the bankrupt, alleging the decease of the original assignee in bankruptcy, and setting up his own appointment in his place. In that bill the complainant, who is the present respondent, set forth his own appointment as assignee in bankruptcy in the place of one John Palmer, deceased, and prayed for leave to come in under the prayer of the original bill, and to be made the complainant in that suit. He then alleged that the respondent, the present complainant, was regularly declared a bankrupt in 1843, and that all his property vested in the assignee, who subsequently deceased, with proceedings in bankruptcy still pending; that the bankrupt had a claim against the republic of Mexico, to satisfy which claim the award was made; that the claim was not described so as to render it available to the bankrupt's creditors, and that no such evidences as would enable the assignee to recover the claim were put into his hands, leaving the assignee ignorant of the true value of the assets, and that the assignee therefore reported them to the court as of no value; that no right, title, or interest in the claim ever passed out of the assignee or became vested in the bankrupt; that the bankrupt had subsequently prosecuted the claim in his own right, falsely and fraudulently claiming that his own debts in bankruptcy had been satisfied, and that the claim had been revested in him; and finally the complainant in that suit alleged that the award belonged to him as the assignee of the bankrupt's estate. Whereupon he prayed for an injunction under the eighth section of the act of congress of March 3, 1849 [9 Stat. 394], and for general relief. The answer in that suit averred that the claim against the republic of Mexico was described in the schedule in the manner prescribed by the rules of the district court, and that it was mentioned as subject to a mortgage, and that no value was then set upon the claim, because he then believed it was without value. The answer further set up that the respondent communicated to the assignee the situation of all the claims mentioned in his schedules; that all the papers and evidences in support of the claims were not in his possession, but had been in the year 1842, or earlier, publicly filed before the commissioners under the convention of April 11, 1839, were afterwards placed in the public archives of the government, and there remained till the time of the award. The proceedings in the bankrupt court were then set forth in the answer, and the discharge of the bankrupt on December 17, 1844. Then the answer alleged that on March 14, 1845, the assignee filed a petition to sell the estate described in the bankrupt's schedules, and that, in pursuance to an order made to that effect, the estate and demands of the bankrupt were afterwards sold at public auction to R. M. Clark; that the respondent, on the day following the sale, purchased all the estate and demands from the said R. M. Clark, and that he afterwards prosecuted this claim at his own expense. On the 20th of June, 1847, the circuit court of the United States for the District of Columbia issued an injunction restraining the secretary of the treasury from paying the amount of the fund, and the respondent from receiving it till the further order of the court. On the 30th of May, 1853, the circuit court decreed that the fund should be paid to W. H. Y. Hackett, as assignee, for distribution among the creditors of the respondent. From that decree the respondent appealed to the supreme court of the United States, and in the December term, 1854, the decree of the circuit court was affirmed. Among the questions discussed at the bar in that suit, and included in the pleading, was whether the sale of the claim of R. M. Clark, and the purchase of the same by the respondent on the following day, was fraudulent or valid, and it was determined in the supreme court to be fraudulent.

The conditions of the pleadings, and the allegations therein in this suit, are sufficiently expressed in the opinion of the court.

H. B. Fernald and C. W. Tuttle, for complainant.

Mr. Hackett, pro se.

CLIFFORD, Circuit Justice. Both the circuit court and the supreme court, in their respective spheres of judicial action, had undoubted jurisdiction of the cause and the parties, and their determination of the matter is final and conclusive, unless it be shown, in due form of law, that their respective decrees were procured by the fraud of the complainant in that suit. Circuit courts have no jurisdiction to review the judgments or decrees of the supreme court in any case, and a circuit court for one circuit is equally destitute of authority to review or in any manner to revise the judgments or decrees rendered or passed by a circuit court for another circuit. They can only be reviewed on writ of error, or on appeal to the supreme court. Such obvious truths need only to be stated in order to command universal assent as self-evident propositions, so much so that any attempt to support or fortify them by argument or authority would be quite out of place. It is not upon any such grounds that the complainant in this suit seeks redress for his alleged wrongs. The charge against the respondent is, that the respective decrees pronounced in that suit were procured by fraud as alleged in the bill, and it is upon this ground alone that he prays that they may be set aside and annulled. Some reference now becomes necessary to the pleadings in this suit, in order that the causes of complaint and their nature may become more fully understood.

According to the allegations of the bill, the complainant filed his petition in bankruptcy on the 28th of January, 1843, and was declared a bankrupt on the 22d of March following, and on the 7th of December, 1844, a decree of the district court was passed, discharging him from the debts he owed in his private right at the time of presenting his petition. On the 22d of March, 1843, John Palmer was appointed assignee of his property, rights, and credits, and on the 14th of March, 1845, the district court decreed a license to the assignee to sell the assets of the bankrupt, and on the 9th of April, in the same year, the assignee sold all his assets at public auction to one R. M. Clark, for the sum of two dollars, and on the 14th the complainant purchased the same under a formal and sufficient bill of sale from the auction vendee for a valuable consideration. Among those assets so purchased, as the complainant alleges, was a certain claim against the republic of Mexico, for the unlawful seizure of the cargo of the schooner Louisiana, for which claim he admits the commissioners under the treaty aforesaid awarded him the sum of $86,786.29, payable from the treasury of the United States, on the 15th of May, 1857. He then alleges that one Benjamin C. Clark of Boston, falsely claiming to be one of his creditors by virtue of a certain pretended judgment, did on the 15th of March, 1851, petition by bill the circuit court of the United States for the District of Columbia, for an injunction to restrain the secretary of the treasury from paying him the fund until the further order of the court. That judgment which is particularly described in the bill he alleges was obtained against him by the fraud and collusion of the attorney employed to defend the suit, and therefore he avers that it is void. B. C. Clark, in his bill before mentioned, prayed that the then assignee, or such other as should be appointed, might come in under the prayer of the original bill and be made the party complainant in that cause. In that connection, the complainant in this cause alleges that one Charles G. Nazro, the copartner of Benjamin C. Clark, falsely pretending that the copartners were creditors of his estate in bankruptcy, on the 19th of May, 1851, petitioned the district court of the United States for the district of New Hampshire for the appointment of an assignee instead of John Palmer, deceased, praying that the respondent in this suit, or some other person, might be appointed as such assignee, and falsely representing at the same time that John Palmer left assets unsold, and that recent occurrences had given them value, and that the district court, on the same day, decreed that the respondent be appointed assignee for the purpose prayed in the petition. Upon receiving that appointment as assignee, the complainant alleges that the respondent, on leave granted by the circuit court of the United States for the District of Columbia, was made complainant in that cause, under the prayer of the original bill filed by Benjamin C. Clark, and that such proceedings were had in that suit so prosecuted by the respondent, that on the 28th of March, 1853, the said circuit court did decree that the fund, less twenty per cent, paid to the agents who prosecuted the claim, be paid over to the respondent as such assignee, to be by him distributed among the creditors of the complainant. He further alleges that he appealed from the decree of the circuit court to the supreme court of the United States, and that such proceedings were had in the supreme court, that the decree of the circuit court was affirmed. That fund was then received by the district court of the United States for the district of New Hampshire, as the complainant alleges, and still remains in its custody under that decree.

Such is the substance of the stating part of the bill. Certain denials are then made by the complainant, which it becomes important to notice. He denies that he owed the judgment in favor of B. C. Clark, or any part of the same since the filing of his petition to be declared a bankrupt, and repeated the allegation that it was obtained by fraud and collusion. He also denies that any debt was due to Nazro and Clark on the 28th of January, 1851. On the contrary, he avers that they were indebted to him, and he also

denies that John Palmer, as assignee, left unsold any of the assets, but avers that he closed and ended all the business appertaining thereto on the 9th of April, 1845. His theory is that all the proceedings in bankruptcy were closed by the original assignee, and he accordingly alleges that the respondent was not authorized to set aside the proceedings of the former assignee, and in so doing that he exceeded the authority of the court, and being deceived by the false representations of others, misrepresented the facts to the circuit court of the United States for the District of Columbia, and to the supreme court, by which false representations, and by the fraud and collusion of his own counsel, both courts, not knowing the real facts, were induced to decree, and did decree, that the fund should be paid over to the respondent. That claim, as he alleges, was considered valueless at the date of his petition to be declared a bankrupt, and continued to be so considered up to the time of its sale by the original assignee, and would not have been allowed by the commissioners but for his great skill and effort in prosecuting it, wherefore he claims that he was equitably entitled to the whole amount. He then sets forth the evidences on which he relies, to show that the judgment of B. C. Clark, described in his creditor's bill, was obtained by fraud and collusion. They consist chiefly of the alleged fraudulent and collusive conduct of the attorney employed by him to defend the suit in which the judgment was rendered. According to the allegations of the bill, his attorney was seasonably employed, duly instructed how to prepare and conduct the defence, and well knew that the complainant was ready and willing to aid and assist when called on for that purpose, and yet. as he alleges, his attorney fraudulently colluded and conspired with the plaintiff in that suit, and others in his interest, and fraudulently abandoned the defence, so that he was defaulted. These matters he admits were not pleaded in defence in the circuit court of the United States for the District of Columbia, and the reasons why they were not he alleges to be that he was fraudulently instructed by his counsel that the proceedings in bankruptcy, together with the sale of the assets by the original assignee, were a perfect and complete bar to that suit. Other minor matters are then set forth as showing the motive of some of the parties implicated, or the inducement which prompted them to aid in procuring the appointment of the respondent as assignee. On this point he alleges that Charles H. Dougherty and Michael Dougherty respectively claimed certain portions of the fund, on account of services alleged to have been rendered in getting it allowed, which he refused to admit, and that the latter said if he did not comply he would tie up the fund in Washington so that the complainant would not get any part of the award. Prompted solely by the reason that he refused to allow those claims, the complainant charges that Charles H. Dougherty and Michael Dougherty, and Joseph Hopkins Stewart, and one John L. Hayes, afterwards his counsel, and the respondent, intending and combining to defraud the complainant out of his just rights and to deprive him of the benefits of the award, conspired and confederated together, and, as the means of the final consummation of their designs, caused the proceedings before mentioned to be instituted in the district court of the United States for the district of New Hampshire, and by misrepresentation fraudulently induced that court to appoint the respondent assignee, and as further means of consummating their designs, caused the original proceedings to be commenced in the circuit court of the United States for the District of Columbia, and also caused the respondent to present his bill in that court, and become a party complainant in that cause. As a more effectual means of accomplishing their designs, he alleges that one of them offered his professional services to him, to act for him in the conduct and management of his defence, and that being ignorant of their purposes, he did retain and employ him to prepare and conduct his defence, but that he so aided and assisted the adverse party by keeping out material matters of defence contrary to his instructions, that the court decreed the case against him and granted the prayer of the bill. After stating in detail the several evidences so withheld, and specifying the several fraudulent acts, omissions, and conspiracies of his counsel in preparing and conducting his defence, he avers that he was ignorant of all those fraudulent acts, omissions and conspiracies of the parties named, until after the decree of the supreme court affirming the decree of the circuit court, and until after the final decree. Wherefore he prays that the decree of the supreme court affirming the decree of the circuit court, and the decree of the circuit court ordering the fund to be paid to the respondent as assignee, and enjoining the secretary of the treasury from paying the same to the complainant, may be set aside and annulled, and for other relief. On the 15th of August, 1857, the respondent appeared and filed his answer. Having already determined that this court possesses no jurisdiction to review the decree either of the supreme court or of the circuit court, it will only be necessary to refer to such portions of the answer as are responsive to the charge of fraud and collusion as set forth in the bill. Those allegations of the bill can only affect the respondent in this suit, and no one of the other persons implicated in the suggestions of fraud has become, or in any manner been made, a party to this proceeding. Separate denials are introduced into the answer to each distinct charge of fraud. They are full, clear, and explicit, and in respect to each

subject-matter embraced in the bill are as comprehensive as the charge. Actual fraud, when charged as in this case, is of course issuable, and as in all other cases where it is directly imputed, the burden of proof lies on the party who seeks to set aside the proceedings. Stronger evidence may be required to satisfy the court of the truth of a fact, irrespective of the effect of the answer in cases of fraud, than in other issuable matters in controversy, whether at law or in equity, but the fraud must be established by fair and reasonable inferences to be drawn from the facts proved, and unless it is so established the case fails, and the transaction rests unimpaired. Askham v. Barker, 19 Eng. Law & Eq. 529. Charges of actual fraud, unsupported by evidence showing the truth of the imputations, if denied by the answer, are of no avail, for the plain reason that fraud is not to be presumed in any case without proof, and he who makes the charge has the burden of proof to establish the imputation. Superadded to that general rule, which is applicable in all cases whether at law or in equity, is another equally salutary, which is peculiar to hearings in equity upon bill and answer, and that is, where the charge as made in the bill is positively denied in the answer, a decree cannot be pronounced for the complainant on the testimony of a single witness, without some corroboration either from testimony of other witnesses or from the circumstances proved in the case. In equity the established rule is that an answer, responsive to the allegations and charges made in the bill, and which contains clear and positive denials thereof, must prevail unless it is overcome by the testimony of two witnesses to the substantial facts, or at least by one witness, and such attendant circumstances as will supply the want of another witness, and thus control the statements of the answer, or show its incredibility or insufficiency as evidence. 3 Greenl. Ev. § 289; Daniel v. Mitchel [Case No. 3,-562]; Hughes v. Blake, 6 Wheat. [19 U. S.] 453; Lenox v. Prout, 3 Wheat. [16 U. S.] 520.

Separate denials to each and every charge of fraud as made in the bill are contained in the answer, and in language as clear, positive, and explicit as could well be chosen, and in addition thereto the respondent declared that he wholly denies that he has at any time, for the purposes set forth in the bill or for any purpose conspired or confederated with the persons therein named, or any or either of them, to consummate any design in respect to the complainant, or the award, or any matter or thing charged in the bill. That denial is repeated and enlarged when the respondent says he wholly denies that he has confederated, conspired, or combined with any person or persons whether named or not named in the bill, in any way to defraud, injure, or prejudice him, or to deprive him of the award or any part thereof, or to influence the con-

duct of any person or persons retained or to be retained as counsel for the complainant in any or either of the suits mentioned, or in any other matter whatsoever. These references to the bill and answer are sufficient to show what the state of the pleadings is in the particular under consideration, and the result is, that the burden of proving the charges of fraud against the respondent as made in the bill is upon the complainant, according to the rule of law already laid down. Without repeating the charges of fraud as alleged in the bill, it will be sufficient to say that, so far as the respondent in this suit is concerned, not one of them is made out of any testimony in the case. Seven witnesses were examined by the complainant, and, after a careful perusal of their depositions, it is not perceived that there is anything in their statements, or the exhibits accompanying the same, which has any tendency to show, either that the decree of the circuit court of the United States for the District of Columbia, or the decree of the supreme court affirming the same, was procured by or through any fraud practiced by the respondent. This conclusion renders it unnecessary to enter upon a separate consideration of the several propositions assumed by the counsel for the complainant on this branch of the case, as the answer already given applies to them all, and as their separate examination would only serve to protract this investigation without accomplishing anything particularly beneficial to either party, it will be omitted. Recurring to the pleadings in this suit, there is not alleged in the bill so much as one fact deemed material to the decision of the controversy in its present stage, which is not directly met by the respondent and emphatically denied in the answer. Such positive denials in the answer, inasmuch as they are directly responsive to the charging part of the bill imputing actual fraud, must be considered by every rule of equity pleading as an insuperable barrier to any recovery by the complainant, unless those denials are overcome by competent and sufficient evidence. Eyre v. Potter, 15 How. [56 U. S.] 56; Price v. Berrington, 7 Eng. Law & Eq. 254. No such evidence has been exhibited by the complainant, and as this court has no power to grant relief under the circumstances of this case, except upon the ground of fraud, the prayer of the bill must be denied.

Another ground of defence assumed by the respondent deserves to be considered, for the reason that if tenable, it furnishes a complete answer to the suit, not only in its present form, but in any form in which it may be hereafter brought. By the eighth section of the bankrupt act of the 19th of August, 1841, it is among other things provided that no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an ad-

verse interest touching the property and rights of property aforesaid in any court whatever, unless the same shall be brought within two years after the declaration and decree in bankruptcy, or after the cause of suit shall have first accrued. Assuming the facts to be true as they are stated and charged in this bill of complaint, the cause of action in this suit accrued at the time when the complainant became possessed of the knowledge of the fraudulent acts, omissions, and conspiracies whereby the persons named in the bill procured the respective decrees which he now seeks to have set aside and annulled. In his bill the complainant alleges that he was ignorant of those fraudulent acts, omissions, and conspiracies until after the decree of the supreme court affirming the decree of the circuit court, and until after the final decree. It is conceded by the counsel on both sides, that the decree of the supreme court affirming the decree of the circuit court went into operation as early as the 7th of May, 1855. On that day the fund was paid over to the district court of the United States for the district of New Hampshire, under the final decree of the circuit court of the United States as affirmed by the supreme court, and it is admitted in argument by the counsel for the complainant that the limitation, if it applies at all, commenced to run from that date. Payment of the fund could not have been made until after the final decree in the circuit court, and the bill in effect admits that after the final decree the complainant became informed of the fraudulent acts, omissions, and conspiracies whereby those respective decrees had been procured. It is clear, therefore, that the limitation commenced as early as the 7th of May, 1855, when the fund was paid over to the bankrupt court, for distribution among the creditors of the complainant. As appears by the record, the bill in this suit was filed on the 19th of June, 1857,—more than two years after the cause of action accrued. Three propositions are assumed by the counsel for the complainant in answer to this ground of defence. In the first place, they insist in effect that so much of the answer as sets up this limitation as a bar to the suit is not properly before the court. No such defence was set up in the answer as originally filed on the 15th of August, 1857. A motion to amend the answer in this particular was made at the October term, 1858, and the amended answer was filed on the 1st of March following, which was duly allowed in court on the 16th of the same month. That motion was addressed to the discretion of the court, and being one which it was competent for the court to allow, it must be considered that it was duly and properly allowed. In the amended answer, the respondent set up the limitation in the act of congress before mentioned, and claims the same benefit of the provision as if he had pleaded the same, and the only question is whether it constitutes a bar to the suit.

It is insisted by the counsel for the complainant that it is not a bar because the respondent is not now, and was not at the time the decrees were pronounced, the legal assignee of his bankrupt estate. Their argument on this point assumes that his appointment was procured by fraudulent misrepresentations, as charged in the bill. It overlooks the important and controlling fact that all these charges of fraudulent misrepresentations as made in the bill are particularly and emphatically denied in the answer, and, being unsupported by any sufficient proof, cannot avail. In the absence of competent and sufficient proof to sustain the allegations of fraud when thus denied, it must be assumed, on the principles already explained, that the appointment was legally and properly made, and if so, then it is obvious that the proposition cannot be maintained.

One other branch of the argument only remains to be considered, and in respect to this last proposition a few words will be sufficient. It is insisted that the present bill is no more than an amendment to an original bill filed in this court on the 18th of March, 1856, which was subsequently dismissed by the court. Regarding the proposition as directly contradictory to the record in this suit, it cannot be sustained. As already remarked, this bill was filed in court on the 30th of June, 1857, and is in theory and fact an original bill, as clearly and fully appears by the record, which cannot be contradicted. King v. Robinson, 33 Me. 114, and cases cited. Suits, whether at law or in equity against an assignee in bankruptcy, under the act of congress of the 19th of August, 1841, by any person claiming an adverse interest touching the property or rights of property of the bankrupt's estate, must be brought within two years after the cause of action shall have first accrued, and if not so commenced within that time, that provision of the act of congress, if well pleaded, constitutes a complete bar to the suit. This suit was not commenced within the two years after the cause of action first accrued, and therefore is not maintainable.

On both grounds I am of the opinion that the suit cannot be maintained, and the bill is hereby dismissed with costs.

[NOTE. Complainant appealed to the supreme court, which affirmed the decree dismissing the bill, stating that the circuit court correctly held that the evidence entirely failed to establish the allegations of fraud. Mr. Justice Nelson delivered the opinion. Clark v. Hackett, 1 Black (66 U. S.) 77.]