The Galena and Southern Wisconsin Railroad Company

*v.*

William Ennor.

*Filed at Ottawa January 25, 1886.*

1. Subscription—*secret agreement favoring the particular subscriber.* A secret agreement made with a subscriber to the stock of a railway corporation, who subscribes with others, that he shall pay only a part of his subscription, is fraudulent as to the other subscribers, and void, and his subscription will be valid and binding for the whole amount thereof.

2. Same—*upon condition not performed.* A subscription to a railway company to take a certain number of its first mortgage bonds, containing a clause that it is not to be binding unless one hundred of such bonds are subscribed for, is not binding until one hundred of the bonds are so subscribed.

3. And a subscription to be paid on demand being made at any time after the company's road should be graded to a point within five miles of a village named, the same to be in force only until September 20, 1879, after that date, without performance of the condition, is an invalid subscription, and can not be enforced.

4. Chancery—*relief against a judgment—neglect to make proper defence at law.* If a party having the means of defence to an action at law in his power, neglects them, and suffers a recovery to be had against him, a court of equity will not grant him relief against the judgment unless he

shows he was prevented from availing of his defence by the fraud or improper act of the plaintiff, unmixed with negligence or fraud on his part.

5.   So where a party sued at law stands by and permits the introduction of incompetent evidence of a fact necessary to be shown to entitle the plaintiff to recover, which could not have been shown by proper evidence, and in consequence thereof judgment is recovered against him, a court of equity will not relieve him from the result of his own neglect and inattention to his legal rights.

6.   SAME—*relief against judgment—on ground of fraud.* It is no ground in equity for setting aside a judgment at law, that there was false testimony given on the trial, or false representation or assertion as to the defendant's liability previously made; and the failure of the plaintiff to produce written evidence on the trial, and giving parol evidence, where inadmissible if objected to, will not amount to a fraud on the defendant in the judgment, as to the fact the written evidence would have shown.

7.   SAME—*relief against judgment on subscription for bonds and stock which the plaintiff can not deliver—to what extent.* A judgment was recovered by a railway company on a subscription for eight of its first mortgage bonds and forty shares of its stock, which it was afterwards unable to give through its own default, having parted with them, its mortgage having been foreclosed, and the company become insolvent. The judgment debtor sought by bill to have the collection of the judgment enjoined until the bonds and stock should be deposited in court for him: *Held,* that he was entitled to some relief, but not to the extent sought, as the bonds and stock could not be delivered, but that he was entitled to have the actual value of the proportionate share of the eight bonds credited upon the judgment. In such case the company would be chargeable only with the value of the bonds at the time it disposed of them—not their face value or purchase price.

8.   CONCURRENT OBLIGATIONS—*recovery of judgment by one of the parties—effect on the obligation of the other.* Where the holder of railroad bonds and stocks sells the same for a certain price, the undertaking to pay and to deliver the bonds and stocks are concurrent, and neither can compel performance by the other without being himself ready and willing to perform his part; and a recovery of judgment for the price will not absolve the vendor from performance on payment of the judgment, nor will he be required to perform before the judgment is paid; but if he puts it out of his power to perform, by the sale of the bonds and stock, and becomes insolvent, a court of equity will credit the judgment, with the value of such bonds and stock at the time of their conversion.

9.   BURDEN OF PROOF—*to show that a condition has been fulfilled.* In an action on a subscription conditioned upon a certain amount being subscribed, it is incumbent on the plaintiff to show affirmatively that the amount named had been subscribed before suit. Without such proof he can not recover.

10.   SET-OFF—*in equity.*   It is not essential to the proper allowance of a legal demand as a set-off in equity against a judgment at law, on the ground of the insolvency of the party in whose favor the judgment was recovered, that the insolvency should have occurred subsequent to the judgment.   The set-off may be allowed irrespective of the time of the occurrence of the insolvency, whether before or subsequent to the judgment.   Nor is the case of *Chicago, Danville and Vincennes Railroad Co.* v. *Field*, 86 Ill. 270, to be understood as holding a different rule.

11.   And although the cross-demand in such case might have been set off in the action at law in which the judgment was recovered, that was permissive, but not compulsory on the defendant.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Jo Daviess county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. M. Y. JOHNSON, and Mr. J. S. BAUME, for the appellant:

After an appearance and defence at law, when the identical matter was an issue, and found against the defendant, a court of equity will not relieve from the judgment, or grant a new trial.   *Fuller* v. *Little*, 69 Ill. 229 ; *Hawley* v. *Summon*, 102 id. 118 ; *Daws* v. *Talcott*, 2 Kern. 184 ; *Collins* v. *Bennett*, 46 N. Y. 490 ; *Baker* v. *Palmer*, 83 Ill. 574.

*Res judicata* embraces not only what has been determined in the former suit, but extends to all matters properly involved, which might have been raised and determined by the case.   *Rogers* v. *Higgins*, 57 Ill. 244 ; *Kelly* v. *Dowlin*, 70 id. 378 ; *Briscoe* v. *Lloyd*, 64 id. 33 ; *Hicks* v. *Chapin*, 67 id. 375 ; *Howell* v. *Goodrich*, 69 id. 556 ; *Brown* v. *Swan*, 10 Pet. 498.

Courts of equity will not grant relief against a judgment at law on any grounds that might have been available on the trial.   *Lyons* v. *Coldridge*, 69 Ill. 536 ; *Fuller* v. *Little*, id. 229 ; 18 How. 420 ; 24 id. 241 ; *Coit* v. *Tracy*, 8 Conn. 268 ; *Brown* v. *Swan*, 10 Pet. 498 ; *LeGuen* v. *Gouverneur*, 1 Johns. C. 502 ; 2 Burr. 1009 ; 7 Tenn. 269.

A party is not to be allowed a double chance of presenting a defence.   If his attorney is incompetent and irresponsible,

it is defendant's *laches,* and a court of equity will not inter-
pose. *Kern* v. *Strausberger,* 71 Ill. 413; *Walker* v. *Shreeve,*
87 id. 475; *Clark* v. *Erving,* 93 id. 572.

A party will not be relieved on the grounds of his having
proceeded to trial at law without sufficient evidence, when it
was in his power to have obtained that evidence by a bill of
discovery. 4 Johns. 510; 1 Johns. Ch. 50; 1 Johns. 492;
3 Johns. Ch. 351; *Wright* v. *King,* Har. (Mich.) 12.

Nor will he, on grounds of which he could have availed
himself, unless he was prevented from doing so by fraud or
accident, or the act of the other party, unmixed with negli-
gence or fraud on his part. *Duncan* v. *Lyon,* 3 Johns. Ch. 351.

A party will not be relieved from a judgment at law as be-
ing contrary to equity, unless he was ignorant of the facts
constituting his defence, or they could not have availed at
law. *Abrams* v. *Camp,* 3 Scam. 291; *Walker* v. *Kretsinger,*
42 Ill. 502.

Any *laches* on his part will prevent his obtaining relief in
equity. *Ballance* v. *Loomis,* 22 Ill. 84; *Higgins* v. *Bullock,*
73 id. 206.

The fraud for which a judgment may be vacated in equity,
must be in the procurement of the judgment. *Muscatine* v.
*Railroad Co.* Dill. C. C. 536.

Where a party elects to defend at law, he is bound to pre-
sent every defence he can. *Hendrickson* v. *Hinckley,* 17 How.
443; *Curtis* v. *Cisna,* 1 Hamm. 432; *Burton* v. *Hynsen,* 14
Ark. 32.

It must appear that the defendant was not aware of the
fact sought to be brought out prior to the trial at law. *George*
v. *Strange.* 10 Gratt. 499; *Faulker* v. *Harwood,* 6 Rand. 125.

Mr. R. H. McClellan, and Messrs. D. & T. J. Sheean, for
the appellee:

The judgment was obtained through false representations
and false testimony on the part of the company, the falsity

of which·was not known to Ennor for over fifteen months thereafter. *McGahn* v. *Ford*, 68 Ill. 215.

A party putting it out of his power to perform, or simply unable to perform, can not compel the other party to perform. *Mecum* v. *Railroad Co.* 21 Ill. 533; *Stoolfire* v. *Boyse*, 71 id. 223; *Bourland* v. *Gibson*, 91 id. 470.

As to grounds for a court of equity to grant a new trial at law, see Freeman on Judgments, (2d. ed.) sec. 507; *Hubbard* v. *Hobson*, Breese, 149; *Gregg* v. *Brewer*, 67 Ill. 532; *Smith* v. *Allen*, 63 id. 475; *Shinkle* v. *Litcher*, 47 id. 217; *Foster* v. *Wood*, 6 Johns. Ch. 87; *Lansing* v. *Eddy*, 1 id. 51; Willard's Eq. Jur. 353; *Davis* v. *Tiliston*, 6 How. 119; *Weaver* v. *Poyer*, 79 Ill. 422; *Wilday* v. *McConnell*, 63 id. 279.

The concealment of facts which, if known at the trial, would have prevented a recovery, is a good ground of equitable relief. Freeman on Judgments, sec. 491; *Mitchell* v. *Harris*, 2 Ves. 135; *Skinkle* v. *Litcher*, 47 Ill. 216.

Fraud as a ground of equitable relief: Freeman on Judgments, sec. 489; *Nelson* v. *Rockwell*, 14 Ill. 375; *Weirich* v. *DeZoya*, 2 Gilm. 385; *Wilday* v. *McConnell*, 63 id. 279.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a bill in chancery, brought by William Ennor, in the circuit court of Jo Daviess county, for relief in respect of a judgment for $5678, rendered against him in favor of the Galena and Southern Wisconsin Railroad Company, on June 30, 1879, for the subscription price of eight of the first mortgage bonds of said company, which he had agreed to pay by signing the following subscription paper for eight bonds:

"We, the undersigned, hereby agree to take the number of first mortgage bonds and shares of stock of the Galena and Southern Wisconsin Railroad Company set opposite our names, and to pay for the same at the rate of $650, in cash, for each $1000 bond and five shares of stock, on demand

being made by the secretary of the company,—the money to be deposited in one of the banks of Galena, as collected, and kept as a special fund, to be used for building and equipping an extension of the Galena and Southern Wisconsin railroad to Wingville. This subscription not to be binding unless one hundred of said bonds shall be subscribed for.

GALENA, *Feb., 1877.*"

The action wherein the judgment was recovered, was brought upon said subscription paper. The bill sets out that the complainant never received from the company the bonds or stock so subscribed for, and that the company is utterly unable to furnish and deliver the bonds and stock; that the company is wholly insolvent; that its railroad, and all its property and franchises, were sold and conveyed, on May 3, 1879, to a purchaser at a foreclosure sale, under a decree of foreclosure of a mortgage given by the company, to secure all the bonds issued by it; that one hundred of said bonds were never subscribed for—a fact of which the complainant was ignorant at the time of the recovery of the judgment, and has since discovered; that on July 11, 1879, upon a writ of *capias ad satisfaciendum* issued upon the judgment, the complainant was arrested and imprisoned in jail, and kept so imprisoned until September 28, 1880, a period of more than fourteen and a half months, when he was released on bail, pending proceedings on appeal for discharge under the Insolvent Debtor act, which proceedings were still pending; and that it was not until after such release from imprisonment, when, for the first time, he learned that the full number of one hundred bonds had not been subscribed for. Fraud is charged in obtaining the judgment through false representations and false testimony on the part of the railroad company. The bill prays for an injunction to restrain any further attempts to collect the judgment until the defendant is able and ready to produce and deliver the said eight bonds and forty shares

of stock, that the judgment be set aside, and a new trial granted. Also, that a promissory note for $500, which the complainant holds against the company, be set off against the judgment. The circuit court, on hearing, dismissed the bill. On appeal to the Appellate Court for the Second District, that court reversed the judgment of the circuit court, and entered a final order that a new trial be granted, and that the collection of the judgment be enjoined until the railroad company produce the bonds and stock in court, to be delivered to the complainant—whereupon the defendant took this appeal.

There is no controversy upon the facts, and we do not think they show ground for setting aside the judgment and allowing a new trial.

As respects there not having been the number of one hundred bonds subscribed for, it appears there were three subscription papers,—the one signed by the complainant, upon which were subscribed seventy-three bonds; upon another similar paper, nineteen bonds; and a third paper, containing ten bonds, is as follows:

"GALENA, *April 13, 1877.*

"We, the undersigned, hereby agree to take the number of first mortgage bonds, of $1000 each, of the Galena and Southern Wisconsin Railroad Company, set opposite our names, at sixty-five cents on the dollar, and pay for the same on demand being made by the secretary of the company, at any time after said railroad is graded to a point within five miles of the village of Montfort, Wis. The above to be in force only until September 20, 1877."

As to a portion of the bonds on the paper containing the seventy-three, it is objected that the subscription for them was only colorable, in this, that two of the subscriptions, for five bonds each, were under the secret agreement that the subscribers should be required to take and pay for two, only;

and another, for five bonds, was under a similar agreement that only three should be taken and paid for. Such secret agreement was fraudulent as to the other subscribers, and was void and of no avail, and the subscription is to be regarded a valid one for the amount subscribed. *Melvin* v. *Lamar Ins. Co.* 80 Ill. 457.

As to the paper containing the ten bonds, it appears that the company never graded the railroad to a point within five miles of the village of Montfort, and ceased work upon the road before September 20, 1877, and never again resumed the work. Nothing was ever paid on any of these bonds, and none of them were ever taken, and this was an invalid subscription from non-compliance with the conditions thereof by the railroad company. So, then, there were but ninety-two bonds subscribed, and complainant's subscription did not become binding upon him, there not having been one hundred bonds subscribed for. This was a defence which might have been and should have been made in the action at law wherein the judgment was recovered. And it was not mere matter of defence, the one hundred bonds not being subscribed, which it was for the defendant to find out and make appear, but the subscription for them was an element of the cause of action, without proof of which there could not have been a judgment recovered. The declaration was upon the subscription paper, averring that the one hundred bonds had been subscribed. The defendant appeared and defended against the suit by his attorney. All that was needed to avoid the recovery of the judgment was for the defendant to stand upon his legal rights, and insist upon the cause of action being established in a legal mode. Instead of this being done, there was produced upon the trial only the one subscription paper signed by the defendant, and secondary evidence, without objection by the defendant, was given by the statement of a witness that one hundred bonds had been subscribed. Thus the defendant waived his right to have the best evidence, and the legal evi-

dence of the subscription, to-wit, the subscription papers, produced, when, if he had but stood upon such right, the subscription papers would have to have been produced, which, of themselves, would have shown the lacking subscription, and have defeated the action.    The result, the judgment recovered, came from the defendant's neglect and inattention as to his legal rights.

What is relied upon as showing the fraud charged, in obtaining the judgment through false representations and false testimony, is, that the president of the company told the complainant several times after his subscription, that the one hundred bonds were subscribed for, and that the ex-secretary of the company testified on the trial that the one hundred bonds were subscribed for.    We see nothing in this to warrant a charge of fraud.    The hundred bonds were, in fact, subscribed for, and although the subscription for ten of them was conditional, yet, if the condition had been complied with, they would have been valid and available, and have met the requirement of complainant's subscription, and willful falsity can hardly be imputed to the statement that one hundred bonds had been subscribed.    It can not be allowed as a ground for setting aside a judgment, that there was false testimony given on the trial, or false assertions as to liability, previously made.    If this were admitted there would be little stability in judgments.    The declaration itself contains the assertion that one hundred bonds had been subscribed for, but this, though untrue, could not be adduced as evidence of fraud or in justification of reliance upon it, to the neglect of any defending against the suit.    But little more of reliance was complainant entitled to place upon such representations as above, which had been made to him.    The circumstance of not introducing in evidence the subscription papers, and giving parol evidence as to the number of bonds subscribed for, did not, as claimed, amount to a fraudulent suppression of knowledge of the number of bonds subscribed.

The proof fails to show that the complainant was prevented from availing himself of his defence by the fraud or act of the opposite party, unmixed with negligence or fault on his part.   Under the anthorities, a case is not presented for the interference of a court of equity to set aside the judgment. As said by KENT, J., in the case of *LeGuen* v. *Gouverneur & Kemble*, 1 Johns. Cas. 502 : "Every person is bound to take care of his own rights, and to vindicate them in due season and in proper order.   That is a sound and salutary principle of law. Accordingly, if a defendant, having the means of defence in his power, neglects to use them, and suffers a recovery to be had against him by a competent tribunal, he is forever precluded." And again says Chancellor KENT, in *Duncan* v. *Lyon*, 3 Johns. Ch. 351 : "It is a settled principle that a party will not be aided after a trial at law, unless he can impeach the justice of the verdict by facts, or on grounds of which he could not have availed himself, or was prevented from doing it by fraud or accident, or the acts of the opposite party, unmixed with negligence or fault on his part."

But if this relief fails, of having the judgment set aside and a new trial granted, complainant insists that he is entitled to the relief of having the collection of the judgment enjoined until the railroad company produce the bonds and stock in court, to be delivered to the complainant.   This is the relief the Appellate Court granted, and we are of opinion complainant was entitled to some relief in this direction, but not to the extent allowed by the Appellate Court.   The judgment is for the purchase price of the bonds and stock, and it is inequitable that complainant should be made to pay the judgment and get neither bonds nor stock.   He has as yet received nothing whatever, and it is admitted on both sides that it is not now, and never will be, in the power of the railroad company to furnish and deliver any bonds or stock.   If, then, the collection of the judgment is enforced, a large sum of money will have to be paid without any con-

sideration whatever. The judgment did not release the railroad company from furnishing the bonds, but notwithstanding the judgment, and in entire consistency with it in its full integrity, the duty yet remained with the company to deliver the bonds on payment of the judgment. Under the contract of subscription, the delivery of the bonds and payment of the purchase price were concurrent acts. Neither party was bound to perform without performance, or ability and readiness to perform, on the part of the other. The judgment was not a payment of the purchase price, and the company was not bound to deliver the bonds until the judgment was paid, but when paid, it should, under the contract, deliver the bonds. The judgment is in course of being satisfied by imprisonment of the person of complainant in jail, and has been satisfied, in part, by the suffering of some fourteen and a half months' imprisonment. The inability to furnish the bonds has come through the company's default, and it should answer in respect of it upon this judgment, as it is the only mode in which it can be made to respond for the consideration of it. To enjoin the collection of the judgment until the production of the bonds for delivery, amounts to an annulment of the judgment,—it is a perpetual stay of its collection. This, we think, is more than equity requires. It is of no benefit to complainant to have the bonds *in specie.* They are, of themselves, independent of the mortgage security, worthless. It is only their value, which, in an equitable view, complainant is entitled to have. This is not necessarily the face value of the bonds, or the price at which they were subscribed for. It does not appear that there has ever been any depreciation of value in the bonds, and if there had been, any loss from that cause should not be borne by the railroad company, as the complainant has never entitled himself to have the bonds, never having paid the purchase price. Frequent demands were made upon the complainant for his subscription, when the bonds were ready to be de-

livered to him on payment, but he has ever refused to make any payment. It was the right of the company to hold the bonds until payment was made for them. We are satisfied, from the evidence, that, at least, the bonds never underwent any depreciation in value after the time the company became unable to deliver them. The company is, we think, under a no more rigorous responsibility than would come from a conversion of the bonds, considering them as held in trust for complainant, at the time the company disposed of them or became unable to deliver them. The measure of damages for a conversion of the bonds would not have been their face value or purchase price, but their actual value. All the value the bonds ever had, so far as appears, consisted in the mortgage security given for their payment. This mortgage has been foreclosed, and the mortgaged property bought in, in satisfaction of the bonds the mortgage was given to secure, these bonds for which complainant subscribed being among them, they entering into and forming part of the decree of foreclosure. The proportional share of the eight bonds for which complainant subscribed, in the mortgage security and the avails of it, is what we think complainant is entitled to have; that he is entitled to have the value of such proportionate share credited and allowed upon the judgment, and that such is the full measure of relief in this respect; that in equity complainant is not entitled to have the bonds themselves.

It is objected that this goes in impeachment of the judgment; but it does not at all, in our view. It consists with the full force and conclusiveness of the judgment. That there had been delivery of the bonds was not found by the judgment, nor was such delivery within the issue in the case. It was only needful to the recovery of the judgment that there should have been an ability and readiness to deliver the bonds upon paying for them. It was entirely consistent with the judgment, that after it was rendered the bonds

should be held, and not delivered until the judgment was ready to be paid. It is said that at the time of rendering the judgment, complainant might have required the bonds to be deposited in court, and there kept ready to be delivered upon payment of the judgment. This may have been, but the not doing so should not debar the right afterwards to have delivery of the bonds, upon payment of the judgment.

In respect of the set-off of the $500 note of the company against the judgment, the point made against that is, that the company was insolvent at the time of the judgment, and that the set-off should have been pleaded in that action wherein the judgment was recovered. *Chicago, Danville and Vincennes Railroad Co.* v. *Field*, 86 Ill. 270, is referred to as being supposed to decide that it is only insolvency occurring subsequent to the judgment, which will form ground for equitable jurisdiction to have a demand in favor of the judgment debtor set off against the judgment. That was a case of insolvency arising after the judgment, which fact strengthened the equity of the application, and the language there used may have been calculated to mislead, and carry the idea that it was only such subsequent insolvency which would give the jurisdiction in equity. But that case is not to be taken as so deciding, and we are referred to no authority which so holds. Although the note might have been set off in the action at law, that was permissive, but not compulsory upon the defendant. (*Field's case, supra.*) There being no question as to the validity of the note or the insolvency of the railroad company, we are of opinion the set-off of the note should have been allowed, irrespective of the time of the occurrence of the insolvency, whether before or subsequent to the judgment.

The decree of the Appellate Court will be reversed, and the cause remanded to the circuit court for further proceedings consistent with this opinion, the injunction, however, decreed by the Appellate Court, to be continued until the value of

such proportionate share as above mentioned, of complainant's bonds and stock, shall have been ascertained and applied as a credit upon the judgment, as also the amount of said promissory note.

*Decree reversed.*

Mr. JUSTICE MULKEY: I do not concur in the above opinion. I regard the grounds relied on for relief as having been fully settled by the judgment at law, which is still in full force,— or, in other words, I am of opinion that the whole matter is *res judicata.* Such being the case, the decree of the trial court should have been simply affirmed by the Appellate Court.