BORING, Executor, Respondent, vs. OTT, Appellant.

*November 30, 1908—March 9, 1909.*

*Judgment obtained by perjury: Restraining enforcement: Degree of proof required.*

1. Equity will restrain the enforcement of a judgment obtained solely by fraud and perjury of the successful party if the defeated party was not guilty of any negligence or laches.

2. The enforcement of a judgment regularly entered after a trial in a court of law should not be restrained in equity unless the ground for interference is established beyond all reasonable controversy by evidence clear, convincing, and satisfactory.

3. The evidence in this case is *held* insufficient, under the rule above stated, to establish the fraud and perjury alleged.

MARSHALL, J., concurring in the result, is of the opinion that in such a case the facts should not be required to be shown by any higher degree of proof than, as in ordinary cases of fraud, by clear and satisfactory evidence; that the proof was sufficient in this case; but that, in order to be ground for relief, the fraud must have been extrinsic and have directly induced the judgment, and that the mere fact that the judgment was obtained by perjured testimony does not warrant equitable interference.

APPEAL from a judgment of the circuit court for Ashland county: E. W. HELMS, Judge. *Reversed.*

This action was brought to perpetually enjoin the defendant, *Eli Ott,* from further prosecuting an action in which *Ott* was plaintiff and the plaintiff herein defendant in the circuit court for Ashland county, and enjoining the entry and enforcement of collection of such judgment or any part thereof out of the estate of F. J. Pool, deceased, and for other relief, which judgment was ordered by this court in *Ott v. Boring,* 131 Wis. 472, 110 N. W. 824, 111 N. W. 833, where the facts upon which judgment was ordered are stated. The grounds of action to restrain the entry and collection of this judgment are that the contract between Pool and *Ott,* made in 1887, and upon which the judgment sought to be enjoined in this action was founded, was rescinded and canceled by mutual agreement between Pool and *Ott* in 1889, fifteen years before Pool's death, and that *Ott* concealed such fact from Pool's representatives, to whom it was unknown, and after Pool's death asserted his claim against the estate of Pool under such contract which he represented to be in force and valid against the estate, and by fraudulent representations imposed upon and deceived the representatives of Pool and the court and secured a judgment by fraud and perjury which was not discovered until the rendition of the judgment

of this court heretofore referred to, although every reasonable effort to discover the same was made. *Ott* answered, denying generally the material allegations respecting misconduct and rescission, and set up the decision in *Ott v. Boring,* former action, as a bar, and also pleaded lack of diligence in former action.

On the trial of this action the court found as follows:

"That in the fall of 1889 the defendant, *Ott,* was discharged by the late Franklin J. Pool from his employ, and a few days later was re-employed by said Pool solely as a clerk, at a salary of $15 per week. That at the time of such re-employment the written contract or letter of October 17, 1887, was by agreement between them, as a condition of such re-employment, mutually canceled, rescinded, and abrogated, and said *Ott* voluntarily then surrendered up and waived all his rights under the same.

"That soon after the death of said Pool in July, 1904, said *Ott,* concealing the fact of such surrender and cancellation from the family of Pool and from the plaintiff, set up a claim under said contract of a quarter interest in the store business left by Pool, and filed with the county court his verified claim for such interest against said Pool's estate. That in the county, circuit, and supreme courts he asserted in his action thereon against said estate that he was entitled to said interest under said written letter or contract, and concealed the fact of such rescission and cancellation and imposed the said agreement upon the estate and court as valid, and thereby procured a decision of the supreme court in his favor sustaining and upholding his said claim. Such decision was rendered February 19, 1907. 131 Wis. 472, 110 N. W. 824, 111 N. W. 833. That said verification of his claim as a valid one, and concealment of said surrender and cancellation, under the circumstances, was a fraud upon said estate and upon the court.

"That prior to August, 1904, when said *Ott* presented said claim to the family of said F. J. Pool, the family and heirs and executors of said Pool and their attorneys did not, nor did any of them, know, and had never heard, of the existence of said agreement of October 17, 1887. That in August, 1904, was the first time they or any of them ever learned of its existence.

"That between February 19, 1907, and February 22, 1907, the plaintiff's attorneys for the first time discovered that said agreement or letter of October 17, 1887, had been surrendered and canceled in the lifetime of said F. J. Pool, and prior to February 19, 1907, neither the family or heirs of said Pool or the executors of his estate, or their attorneys, or any of said persons, had known or learned, or had any means of knowing or learning, anything of that nature, and had no reason for believing that any such fact existed.

"That prior to the trials which were had in the county and circuit courts upon said *Ott's* claim the said executor and his attorneys used all reasonable and due diligence to ascertain any and all facts bearing upon the validity of said claim, and ascertained everything which was then ascertainable, and were not negligent in failing to discover the fact of said cancellation which afterwards came to light.

"That after the discovery of said new facts between February 19, 1907, and February 22, 1907, the said executor or his attorneys were not guilty of negligence in not applying to the supreme court within thirty days from its decision for an enlargement of its mandate upon the facts then within their possession or in not applying to the circuit court for a new trial under the statute.

"That the issue involved in this action was not involved, tried, and passed upon in the former action of *Ott v. Boring,* determined as aforesaid by the supreme court on February 19, 1907. 131 Wis. 472, 110 N. W. 824, 111 N. W. 833."

And as conclusions of law the court found:

"That in suppressing and concealing the fact of cancellation of said contract said *Ott* procured the judgment in his favor in said former action by fraud.

"That the plaintiff is entitled to an injunction against the defendant perpetually restraining and enjoining him, his heirs, executors, administrators, and assigns, from in any manner enforcing, or taking any steps to enforce, the judgment in his favor rendered or entered or to be entered in this court under the mandate of the supreme court under said decision of February 19, 1907, in said action of *Ott v. Boring,* as executor, and to have the lien of the same set aside as a cloud upon the title to any real estate left by said F. J. Pool, deceased, upon which the same might ap-

pear to be a lien, and with leave to the plaintiff to apply to the court for a further decree upon the foot of the judgment compelling the defendant, *Ott,* to satisfy said judgment in whole or in part, if such relief should become necessary to protect the plaintiff or the estate of said F. J. Pool there-from."

Judgment was rendered in favor of the plaintiff in accordance with the findings, from which judgment this appeal was taken.

For the appellant there were briefs by *Sanborn, Lamoreux & Pray* and *H. B. Walmsley,* attorneys, and *Burr W. Jones,* of counsel, and oral argument by *Mr. F. B. Lamoreux, Mr. Walmsley, Mr. Jones,* and *Mr. A. W. Sanborn.*

*Richard Sleight,* attorney, and *James G. Flanders,* of counsel, for the respondent.

The following opinion was filed January 26, 1909:

Kerwin, J.    1. Counsel for appellant seasonably objected to any evidence under the complaint for the reason that it did not state facts sufficient to constitute a cause of action. The court overruled the objection, and this ruling is assigned as error.    The basic ground upon which equity is invoked to restrain execution of the judgment is the alleged fraud and perjury in presenting and maintaining the claim against the estate of Pool when no such claim existed, because the original agreement between Pool and *Ott* had been can-celed and rescinded and the appellant continued in the employ of Pool under a contract of service only.    The ground upon which the plaintiff's complaint can be sustained, if at all, is based upon the allegations of perjury in verifying the claim and sustaining it by committing perjury, diligence on the part of plaintiff on former trial, and failure to discover such fraud and perjury in time to be available in the former action.    The claim was presented in the county court, disallowed, case appealed to the circuit court, general denial, statute of limitation and payment pleaded, there disallowed, and on appeal to this court reversed, and judgment ordered for

*Ott.* After reciting the facts leading up to the reversal by this court in *Ott v. Boring,* 131 Wis. 472, 110 N. W. 824, 111 N. W. 833, the complaint in the present action sets up facts showing rescission and cancellation of the old contract, promise of surrender by *Ott,* making of the new agreement by which *Ott* agreed to continue in the employ of Pool on a salary, the alleged false claim that the old contract had been lost, concealment of it until after Pool's death, and intent to defraud the estate of Pool by the false claim that the contract was still in force, wilfully testifying thereto, and thus obtaining the judgment by fraud and perjury, which this action is brought to enjoin.

It is strenuously insisted by appellant under this head that the former judgment is conclusive upon the parties to this action and cannot be questioned in the instant case; while on the part of the respondent it is insisted that the alleged rescission, cancellation, and perjury committed by plaintiff not having been discovered until after judgment in the former action, such question was not in fact litigated and therefore cannot be held conclusive upon respondent. It is said that release and rescission are new matters and must be pleaded, and, not having been pleaded or known to respondent at the time of the former trial, he is not precluded by the judgment upon such issues. Of course the doctrine is too well settled in this court to require citation of authority that the parties to an action are not only concluded by the judgment on all matters litigated, but all that might have been litigated between them upon the subject matter of the suit, so that all defenses to the cause of action sued upon, whether set up or not, are concluded by the judgment in the same action. This general rule does not seem to be denied by respondent's counsel, but they contend that where a new defense arises not known to the parties at the time of former trial and which with reasonable diligence could not have been discovered, and which renders it inequitable and unconscionable to permit the other party to retain the fruits of a victory

acquired by deceit and fraud, the general rule does not apply, but that equity will take hold for the purpose of granting relief. This subject was very fully considered in *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433, and it was there held that the bill of review under the old practice no longer obtains under the Code, but that the Code provides a complete system in itself, and that relief, therefore, from a judgment under our practice must be obtained upon the grounds and in the manner prescribed by the Code. Sec. 2879, Stats. (1898), limits the time within which a motion for a new trial may be made on the ground of newly-discovered evidence to one year from the date of verdict or finding. This statute, however, does not deprive a defrauded party of remedy in a proper case. In *Stowell v. Eldred,* 26 Wis. 504, 507, 508, this court said:

"The rule seems to be quite well settled that chancery will relieve against a judgment at law on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or when he was prevented from availing himself of the defense by fraud or accident, or the acts of the opposite party unmixed with negligence or fault on his part."

The foregoing language is approved in *Crowns v. Forest L. Co., supra,* and other decisions of this court. In referring to this subject in *Nye v. Sochor,* 92 Wis. 40, 65 N. W. 854, this court holds that relief in equity may be had against a judgment obtained by fraud, mistake, accident, or surprise unmixed with laches or negligence on the part of the suitor asking relief, and that perjury in obtaining a judgment is sufficient ground for equitable relief where the party applying for relief is without fault. When a proper case is made, an action may be maintained to restrain the enforcement of the judgment. In such cases the action is not for a new trial or to review the judgment, but is directed against the party claiming under the judgment to prevent the execution of it.

So in the present action the judgment is conclusive upon the parties to it and upon the subject matter litigated, and relief can be had only in a direct action upon facts showing a right to enjoin its execution. *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433; *Balch v. Beach,* 119 Wis. 77, 95 N. W. 132.

The general rule laid down in the leading case of *U. S. v. Throckmorton,* 98 U. S. 61, applicable to this class of actions is perhaps not broad enough to cover all cases which might arise where a court of equity would enjoin the enforcement of a judgment. In fact it would be difficult to formulate any general rule sufficiently comprehensive and accurate to fit all cases. The *Throckmorton Case* probably comes as near to stating a general rule applicable to cases of the class under consideration as any in the books. In that case it is said:

"The acts for which a court of equity will on account of fraud set aside or annul a judgment or decree between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered."

This court approved the *Throckmorton* rule in the case of *Uecker v. Thiedt,* 133 Wis. 148, 113 N. W. 447, and others, but it was not its intention to exclude all cases not coming within the *Throckmorton* rule. To do so would be in conflict with other decisions of this court later considered. Even the *Throckmorton Case* does not assume to go farther than to state a general rule, and, after stating several instances where equity will take jurisdiction, continues:

"There is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise, or where the defendant never had knowledge of the suit, being

kept in ignorance by the acts of the plaintiff, or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat, or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and a fair hearing."

Just what fraud "extrinsic or collateral" is sufficient to warrant a court to act is not very clearly defined under the authorities, and, as before observed, necessarily so from the difficulty of prescribing a rule.

It will be seen that the United States supreme court in a later case went a step farther than it did in the *Throckmorton Case* and extended the rule to any case where from the facts it appeared to be against conscience to permit the execution of a judgment. *Marshall v. Holmes,* 141 U. S. 589, 12 Sup. Ct. 62. In the above case the fraud consisted in the use of a forged letter in obtaining a judgment, which was not discovered within time to be available by a new trial, and but for the use of such letter the judgment would not have been secured. The court said:

"Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery"—citing several authorities, including the *Throckmorton Case.*

In *Pico v. Cohn,* 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, relied upon by appellant, where the *Throckmorton* rule is approved, the court lays down the doctrine that in some cases a former judgment may be annulled for fraud; and it will be seen by an examination of the authorities that it is not easy to determine what frauds may be regarded extrinsic or col-

lateral to the matter tried by the first court. The reason of
the rule seems to be based upon the idea that there must be
an end to litigation, and therefore an issue which has been
tried and passed upon by the first court should not be retried
in an action to enjoin the judgment; otherwise, litigation
would be interminable. While the issue might have been lit-
igated and in a sense was, because the continued existence of
the contract was the basis, at least in part, of the recovery,
still the fact that there was no adversary trial upon the issue
of rescission which would have-been a defense if established
in favor of *Boring* is an element which should appeal to the
conscience of the chancellor in determining the right to equi-
table relief. In the *Throckmorton Case* it is said the fraud
must be "extrinsic or collateral to the matter tried by the first
court, and not to a fraud in the matter on which the decree
was rendered." It is not easy to see, however, why an issue
determined in favor of the prevailing party solely by perjury
does not amount to such a fraud, where such perjury was un-
known to the defeated party and could not by the exercise of
reasonable diligence have been discovered. It would seem
that a judgment thus obtained is as unconscionable as one se-
cured against a party by keeping him away from court or by
other corrupt means and thereby preventing a fair trial upon
the merits. *Marshall v. Holmes,* 141 U. S. 589, 12 Sup. Ct.
62; *Tucker v. Whittlesey,* 74 Wis. 74, 41 N. W. 535, 42 N.
W. 101; *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433;
*Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 79 N. W.
229; *Johnson v. Huber,* 106 Wis. 282, 82 N. W. 137; *Balch
v. Beach,* 119 Wis. 77, 95 N. W. 132; *Stowell v. Eldred,* 26
Wis. 504.

While in *Crowns v. Forest L. Co., supra,* the question was
one largely of procedure, the court in no uncertain terms
stated that the new procedure under the Code does not "at-
tempt to divest the courts of the jurisdiction they formerly
possessed to protect the rights of parties when fraud had in-

tervened," but that the remedy must be pursued in the ·manner prescribed by the Code.    The court said:

"Courts of equity under the old *regime* had the power of control over the parties,.and would prevent them from asserting rights based upon judgments tainted by fraud or covin. That power exists today, but it must be invoked and enforced in harmony with the true spirit and in accordance with the positive requirements of the new order. . . . But suppose, as in this case, the facts upon which the fraudulent character of the transactions resulting in the judgment sought to be attacked depends were not discovered until the expiration of the year, is the party without remedy ?    While it may rightly be said that the ground upon which defendants seek relief is newly-discovered evidence, yet it is evidence showing fraud and collusion, concealed by the parties to it, and which, it is claimed, has resulted most harmfully to the defendants. This was a favorite subject of relief in equity."

In *Zinc C. Co. v. First Nat. Bank, supra,* this court, speaking upon the subject respecting an action to enjoin a judgment, said:

"In such independent action the complaint may be spoken of as a bill in the nature of a bill of review, in the sense that it is the pleading on the part of a plaintiff to accomplish, in effect, the purpose of the former bill of review.    Strictly speaking, bills of review and bills in the nature of bills of review, as such pleadings were known to the old chancery practice, are not known to the Code."

And, after discussing the limitations upon motions to open judgments, the opinion proceeds:

"Neither does the limitation upon proceedings by motion to open a judgment upon some ground going to the right of plaintiff to the relief granted militate at all against jurisdiction in equity to protect a person from a judgment obtained against him by fraud."

This court again had occasion to consider this subject in *Balch v. Beach, supra,* and we cannot do better than quote from the opinion:

"A court of equity has jurisdiction to relieve against a judgment upon the ground that it is contrary to equity where there is no other remedy, upon several different grounds, and

among them fraud upon the party seeking the relief by the person who obtained the judgment, such party not being :guilty of any inexcusable ignorance or negligence in the matter. *Stowell v. Eldred,* 26 Wis. 504; *Barber v. Rukeyser,* 39 Wis. 590; *Hiles v. Mosher,* 44 Wis. 601; *Johnson v. Coleman,* 23 Wis. 452; *Nevil v. Clifford,* 55 Wis. 161, 12 N. W. 419; *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433. The jurisdiction of equity is not exercised to disturb a judgment. That can only be done according to methods provided by the Code. But it acts directly upon the party who is in a position to and might, if not restrained of his liberty, enforce the judgment, tying his hands so as to prevent him from doing so, thus leaving the judgment good in form but valueless and harmless in fact. *Crowns v. Forest L. Co., supra;* *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 135, 137, 79 N. W. 229; *Johnson v. Huber,* 106 Wis. 282, 82 N. W. 137; *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571. . . . Above :all and over all is the supreme principle to which the vigilant, clean-handed, but wronged, party may resort when all legal remedies fail, and even precedents for an equitable remedy also, fitting the situation with exactness as to facts,—that equity suffers no wrong to go without a remedy, the wrong being of sufficient gravity to be appreciated by the conscience of the chancellor, and application being made to its jurisdiction seasonably and with clean hands. Its power and mastery of invention and the flexibility of its arm enable it to fit an infinite variety of situations successfully where otherwise wrongs would go unrighted. Pomeroy, Eq. Jur. 109. Its administration is guarded and guided by precedents, which, by judicial policy, fence in its operations more or less closely according to subjects; but in its nature it is expansive, and so may break away *ex necessitate* and set a new mark to meet a new situation, and does not hesitate to do so when otherwise just rights would fail of vindication. *Land, L. & L. Co. v. McIntyre,* 100 Wis. 258, 75 N. W. 964."

The court in *Stowell v. Eldred,* 26 Wis. 504, held that equity will restrain the execution of a judgment obtained by perjury, and the rule there laid down has never been departed from, but repeatedly approved in subsequent cases by this court. *Balch v. Beach,* 119 Wis. 77, 95 N. W. 132; *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433; *Barber*

*v. Rukeyser,* 39 Wis. 590; *Hiles v. Mosher,* 44 Wis. 601;. *Nye v. Sochor,* 92 Wis. 40, 65 N. W. ·854; *Jilsun v. Stebbins,* 41 Wis. 235; *Tucker v. Whittlesey,* 74 Wis. 74, 41 N. W. 535, 42 N. W. 101.

It is insisted by counsel that the late case of *Uecker v. Thiedt,* 133 Wis. 148, 113 N. W. 447, is in conflict with the· *Stowell Case.* We do not so understand it. In the *Uecker· Case* it appears that there was no fraud which induced the· rendition of the judgment, and the court so held. Moreover, it is said in the opinion that there was nothing in the case· showing that the judgment attacked was inequitable or unfair. Nor is anything said in the case tending in any way to discredit the *Stowell Case* or other cases in this court. As. we have seen, the *Stowell Case* is well supported by subsequent decisions of this court and is not wholly without support in other jurisdictions, as will be seen by an examination of the following cases: *Maddox v. Apperson,* 14 Lea (82 Tenn.) 596; *Peagram v. King,* 2 Hawks, 295; *Moore v. Gulley,* 144 N. C. 81, 56 S. E. 681, 10 L. R. A. N. s. 242, where it is held there must be a conviction for perjury; *Nelson v. First Nat. Bank,* 70 Fed. 526; *Galena & S. W. R. Co. v. Ennor,* 116 Ill. 55, 4 N. E. 762; *Moore v. Parker,* 25 Iowa,. 355; *Glover v. Hedges,* 1 N. J. Eq. 113; *Jewett v. Dringer,* 31 N. J. Eq. 586. It is true there is much conflict in the· authorities upon this subject, but we see no reason for departing from the rule heretofore laid down and followed by this court. We believe it is in harmony with the general' rules of equity jurisprudence and best calculated to promote· the doctrine so often enunciated by this and other courts, "that equity suffers no wrong to go without a remedy, the wrong being of sufficient gravity to be appreciated by the conscience of the chancellor, and application being made to its jurisdiction seasonably and with clean hands."

On the allegations of the complaint we think it showed a· case in equity to enjoin the judgment on the ground that it·

was obtained solely upon the fraud and perjured evidence of defendant, and that plaintiff could not with due diligence have discovered the fraud or perjury in time to be available in the first action. Perhaps no court has gone farther than this in upholding the doctrine that equity allows no wrong to go without a remedy, as evidenced by the language heretofore quoted from the *Balch Case*. That language is a vigorous statement of the doctrine, founded upon sound principles and policy. We believe that no new mark need be set in the present case in holding that the allegations of the complaint are sufficient to state a case for relief in equity. If no case is made by the complaint, it would seem that the language quoted from *Balch v. Beach*, 119 Wis. 77, 95 N. W. 132, rests in a fiction not capable of practical application. We therefore conclude that the complaint stated a cause of action, and no error was committed in overruling the objection to evidence under it.

2. It is further assigned as error that the findings are not supported by the evidence. It is established by all the authorities that a very high degree of proof in such cases is required, many cases holding that there must be a conviction for perjury before equity will interfere, while others hold that it must be established beyond reasonable doubt either by admission, documentary evidence, or by such other proof as to leave no reasonable ground for doubt. *Moore v. Gulley*, 144 N. C. 81, 56 S. E. 681, 10 L. R. A. N. s. 242; *Peagram v. King*, 2 Hawks, 605'; *Woodruff v. Johnston*, 19 N. Y. Supp. 861; *Bloss v. Hull*, 27 W. Va. 503; *Moore v. Parker*, 25 Iowa, 355; *Jones v. South's Adm'r*, 3 A. K. Marsh. (10 Ky.) 352; *Clark v. Hackett*, 1 Cliff. 269, Fed. Cas. No. 2,823; *Oldham v. Cooper*, 5 Del. Ch. 152; *Ableman v. Roth*, 12 Wis. 81; *Stowell v. Eldred*, 26 Wis. 504; *Barber v. Rukeyser*, 39 Wis. 590; *Jilsun v. Stebbins*, 41 Wis. 235; *Tucker v. Whittlescy*, 74 Wis. 74, 41 N. W. 535, 42 N. W. 101. The reason of the rule is obvious as laid down in the cases. If a litigant

were permitted to restrain the enforcement of a judgment regularly entered after a trial in a court of law upon conflicting or uncertain evidence as to whether perjury was committed in securing the judgment, it is easy to see what interminable litigation such a rule would invite. Courts of equity, therefore, should not restrain the execution of judgments, except where the ground for interference is established beyond all reasonable controversy by evidence clear, convincing, and satisfactory. *Linde v. Gudden,* 109 Wis. 326, 85 N. W. 323. All the authorities agree that evidence of the highest dignity *is necessary to justify the interference* of equity in such cases. In the instant case the evidence was far from coming up to the rule which the authorities from the earliest decisions down to the present time require. In *Tovey v. Young,* Finch's Prec. in Ch. 193, the Lord Keeper said:

"New matter may in some cases be ground for relief; but it must not be what was tried before: nor when it consists in swearing only, will I ever grant a new trial, unless it appears by deed or writing, or that a witness, on whose testimony the verdict was given, were convicted of perjury, or the jury attainted."

The witness Fassage swore to alleged admissions made by *Ott* nineteen years before the trial to the effect that he had been discharged, while *Ott* positively denied that he ever made such statements or ever had been discharged. True, Powers gave evidence tending slightly to corroborate Fassage. The corroborating evidence, however, was of little force when weighed against other circumstances in the case. Fassage further testified that Pool said he would take *Ott* back at a salary of $15 per week, but that *Ott* would have to surrender the contract previously made, and *Ott* claimed it had been lost or mislaid. It would have been easy for Pool, if the agreement had been canceled as Fassage testified, to have taken some receipt or writing showing the agreement. And

it is singular if it had been canceled that he should let it run from 1889 to the time of his death without in any way making permanent record of it. The fact that the contract was never surrendered or any evidence in writing preserved to show it was, is strong corroborating proof that it continued as *Ott* claimed. *Ott* is corroborated by the written contract and his continuance and interest in the firm, while the only evidence on the other side is the evidence of Fassage respecting alleged statements made nineteen years before the trial with slight corroboration by Powers. Moreover, does it seem reasonable that *Ott* would walk out without any settlement and take nothing when he had a binding contract which had run from October, 1887, until at least the fall of 1889, when it is claimed he was discharged? Why should he peaceably submit to cancellation of his agreement without consideration after the business had prospered and Pool was able to draw from the business $10,000, as it appears he was able to do in 1889? The assets in 1889 were $29,000, or about three times the original investment. Upon this state of the case it is plain that there is not sufficient evidence to make out a case for the plaintiff by that high degree of proof required by the authorities. In the view we take of the case it is unnecessary to consider other questions discussed. It follows that the judgment of the court below must be reversed.

*By the Court.*—The judgment below is reversed, and the action remanded with directions to the court below to dismiss the action.

The following opinion was filed February 26, 1909:

MARSHALL, J. I concur in the result of this case, but upon radically different grounds than those assigned for the decision.

I consider it most unfortunate to engraft a new rule of evidence upon our jurisprudence. Above all things the develop-

ment of the law should be in the direction of simplicity and
certainty rather than the contrary.    At common law but two
rules as to certainty to be attained by evidence were recog-
nized,—the reasonable certainty appertaining to all civil
cases, and certainty beyond a reasonable doubt, applicable to
criminal cases.    That easily understood and adaptable sys-
tem has heretofore, and before the time of any of the present
members of the court, been complicated by the rule of cer-
tainty produced by clear and satisfactory evidence, applicable
to ordinary fraud cases, and certainty beyond all reasonable
controversy, applied to a certain class of civil cases, or leav-
ing no substantial doubt applied to other cases.    To those we
now add, as applicable to this special class of civil cases, the
rule that the turning question must be established on the part
of the plaintiff by the highest degree of certainty known to
the law.    In this confusing state of things little wonder there
is that trial courts go astray.    How beneficial it would be to
the administration of justice, if we could return to the old
landmarks: reasonable certainty under all the circumstances
as to civil cases, and certainty beyond every reasonable doubt
as to criminal cases.

Now I see no reason for going to other jurisdictions and
borrowing this last rule for civil cases.    It has no real exist-
ence, as we shall see as we progress.    I must make my pro-
test against the venture, adhering to the time-honored doc-
trine that fraud must be established by clear and satisfactory
evidence, expressing the belief that such rule should be under-
stood as not, appreciably, if at all, going beyond the ordinary
rule of reasonable certainty.    The term "clear and satisfac-
tory" should be regarded as merely suggesting the nature of
evidence required, in a fraud case, to establish the fact to a
reasonable certainty.

I apprehend that, had my brethren applied to the case the
ordinary rules found in the books, they would not have come
to the conclusion that the learned court's findings are against

the clear preponderance of the evidence. The trial court applied the rules this court has inculcated in fraud cases for fifty years and more. Eminent counsel upon both sides tried the case with the view that such rules were not to be departed from. Nothing of the sort now suggested, that the fraud should be established beyond a reasonable doubt, has ever been held before except in case of avoiding a solemnly executed and acknowledged instrument. I cannot bring myself to concur that, in applying the usual rule, the trial court committed error. I would not now make a new retroactive rule for the purpose of overturning a faultless determination of a question of fact.

It follows that, in my view, the judgment should be affirmed if the enforcement of the first judgment can properly be enjoined upon the ground that it was obtained by perjured testimony.

I will now endeavor to show that, notwithstanding the early decision in *Stowell v. Eldred,* 26 Wis. 504,—which I confess is direct authority for avoiding a judgment by equitable interference on the ground of its having been obtained by perjury, and there has been repeated approval since that time of the general doctrine that equity can thus relieve a party from a judgment obtained by fraud;—it went upon a plain misconception of the law, as indicated by the decisions cited to support it; that it has never been followed as to the precise situation we are dealing with; that the doctrine of it has been in recent years twice repudiated; and that such doctrine is contrary to well-nigh universal authority.

In *Barber v. Rukeyser,* 39 Wis. 590, *Stowell v. Eldred, supra,* was referred to on the general rule of equitable interference, but no perjury was claimed and the judgment was not disturbed. The same is true of *Hiles v. Mosher,* 44 Wis. 601. *Johnson v. Coleman,* 23 Wis. 452, was a case of fraud upon the court in procuring an order of publication of the summons by false representation. That belongs to an en-

tirely different class of cases than the one in hand. *Nevil v. Clifford,* 55 Wis. 161, 12 N. W. 419; *Zinc C. Co. v. First Nat. Bank,* 103 Wis. 125, 79 N. W. 229; and *Balch v. Beach,* 119 Wis. 77, 95 N. W. 132, are cases where the judgment was obtained by collusion between the plaintiff and the representative of the defendant. It will be seen, at once, that they are in a class by themselves and do not go at all on the ground of mere perjury in obtaining the judgment. *Tucker v. Whittlesey,* 74 Wis. 74, 41 N. W. 535, 42 N. W. 101, belongs to a somewhat different class, one where the plaintiff sustained pretty close fiduciary relation to the person against whom the judgment was rendered and failed to disclose that which he was in duty bound to on account of such relations. In *Nye v. Sochor,* 92 Wis. 40, 65 N. W. 854, relief was sought on the ground that the defendant was prevented from being present to make his defense on account of the fraud of the plaintiff,— another well-known class of cases, contemplating physical prevention or something equivalent thereto, not mere withholding of the truth through dishonesty unmixed with duty to disclose because of trust or fiduciary relation of some sort.

The foregoing include substantially all the cases of moment decided by this court where the subject of enjoining the collection or enforcement of an inequitable judgment has been involved. All except the first contain the essential element of extrinsic fraud hereafter alluded to. Most of them refer to *Stowell v. Eldred, supra.* A number repeat what is there said, to wit:

"Chancery will relieve against a judgment at law on the ground of its being contrary to equity, when the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or when he was prevented from availing himself of the defense by fraud or accident, or the acts of the opposite party unmixed with negligence or fault on his part."

Not one, except the first, involved to any extent whatever the precise question here, and the rule itself was stated much

broader than can be vindicated · by reference to authority elsewhere and certainly by the cases cited in support of it, as will be hereafter seen. The general limitless, so to speak, statement, that equity will relieve from a judgment which is unfair merely because the defendant has a defense which he did not seasonably discover and is free from negligence in that regard, of course has no substantial support. It would include a multitude of situations where equity might lay hold to disturb adjudications, leaving no stability to judgments and defeating the public policy that a time must come as to all controversies when they will be considered at rest; remedies having gone as far in the vindication of justice as is practicable; so far that to go further for the purposes of a situation now and then arising, would, in general, do a far greater wrong than to leave the few which are within the realms of mere possibility beyond the boundary of the practicable.

That the unqualified statement contained in the *Stowell Case* was not guarded as it should have been, is suggested by the fact that it has never been since applied to relieve from the effect of mere perjury, and as to fraud has been confined to fraud upon the court or fraud upon the defeated party by preventing—within the strict meaning of the term, suggesting physical prevention or something equivalent, not mere failure of disclosure and abuse of fiduciary, or trust relations and collusion between the prevailing party and the representative, or representatives, of the adverse party—him from making his defense. The suggested limitations are vindicated by the settled law as we find it laid down in all the standard text-books and substantially all authorities.

It is laid down that the causes for equitable interference are divided into two major classes: first, fraud by the prevailing party; second, excusable negligence to present a defense, not attributable to the adverse party. 2 Freeman, Judgments (4th ed.) § 488.

The first class does not relate to fraud respecting the merits and creating the condition in the action passed upon by the court, but fraud extrinsic to the action either practiced upon the court or upon the party. 2 Freeman, Judgments (4th ed.) § 489. That is, some act ulterior to the merits by which the party is prevented from presenting, or induced not to present, his defense. That includes fraud upon the court by presenting the case for judgment under false pretense of having complied with the law as to giving notice to the adverse party so far as the nature of the case would permit, or fraud upon the party by inducing him to absent himself or otherwise keeping him from the trial either by some false pretense or physical prevention,. or keeping him away or intimidating him by threats, or taking judgment contrary to an agreement, rendering the making of a defense the adversary has, impossible, or where the attorney for the defeated party corruptly permitted judgment to be taken, and like situations. All relate, as will be seen, to purely extrinsic matters; extrinsic fraud. It would take much time to go into details. Suffice it to say, that in all cases the element of fraud is extrinsic, that it does not have to do with the merits of the case, as by merely making false proof, wilfully or otherwise.

We do not need to discuss the second major class as it does not, in any view, include such a case as the one in hand. Such class relates to mere excusable neglect on the part of the person asking relief, not chargeable at all to any wrongful conduct on the part of the person against whom relief is sought. But all such relate to matters of an extrinsic character. The subject is dealt with at length along these lines in 2 Freeman, Judgments (4th ed.) §§ 488–496, inclusive, and Black, Judgments (2d ed.) §§ 365–387, inclusive.

So the supreme test of competency for equitable relief is whether the facts constituting the fraud are extrinsic. If they are intrinsic in any sense, competency does not exist. That suggests at once that mere perjury, as in this case, does not satisfy the test.

That was evidently overlooked in the *Stowell Case.* Consider that with the test we find laid down at sec. 489 in Freeman on Judgments (4th ed.) :

"Whenever an issue exists in any action or proceeding, each of the parties should anticipate that his adversary will offer evidence to support his side of it, and should be prepared to meet such evidence with counter proofs. Where he has an opportunity to do this, and does not avail himself of it, or, though availing himself of it, is unable to overcome the effect upon the court or jury of the evidence offered by his adversary, he cannot, in effect, obtain a retrial of the issue before another tribunal by charging that the judgment against him was procured by perjury; and this has been held to continue to be the rule, notwithstanding the existence of a statute authorizing actions to set aside judgments obtained by means of perjury or subornation of perjury."

And in Black on Judgments (2d ed.) § 372 :

"In some jurisdictions, it is thought that if a party to a suit intentionally procures and produces false testimony, suborning his witnesses to perjury and conspiring with them to secure a judgment, this amounts to such fraud as will enable the adverse party, if defeated in the suit, to secure an injunction against the judgment. But this doctrine is denied in other states, and indeed the general current of authority is now in favor of the rule that perjury committed by the successful party or his witnesses at the trial is no sufficient ground for vacating the judgment or enjoining its enforcement."

So firmly established in American jurisprudence is that rule, that it has been recognized as not open to invasion except by legislative authorization and even in face of a plain statute of Minnesota that:

"In all cases where judgment has been, or hereafter may be, obtained in any court of record by means of the perjury, subornation of perjury, or any fraudulent act, practice or representation of the prevailing party, an action may be brought by the party aggrieved to set aside said judgment at any time within three years after the discovery by him of such perjury, subornation of perjury or of the facts constituting such fraudulent act, practice or representation,

—the court regarded the letter of the written law as going to such a dangerous length, as regards equitable interference, on the ground of mere perjury in obtaining the judgment, as not to have been intended to apply to a case where the subject matter was in issue in the action and the losing party had no right to depend upon the evidence of his adversary to disprove the latter's claim or to establish the former's defense. The reasoning of the court on this subject in *Hass v. Billings,* 42 Minn. 63, 43 N. W. 797, affirmed in *Watkins v. Landon,* 67 Minn. 136, 69 N. W. 711, is so logical and so directly in line with the general current of American authority that I cannot do better than to quote from it at length:

"Besides the reason that the act is in derogation of the common law, there is another reason for a strict construction, furnished by the consequences to which a large construction would lead. All who are familiar with the trial of causes know how ready the defeated party is, however full an opportunity he may have had to present his case, to charge that the result was brought about by false swearing and perjury of the successful party and his witnesses. That is often the feeling of the defeated party, especially where there is a direct conflict between the testimony on one side and that on the other. Had these defendants been defeated in the first action, they might have felt and alleged that it was through perjury on the part of the defense. Should they be defeated in this action, and their former judgment be vacated by the judgment in this, they might allege that the result was reached through perjury of the opposite party; and so on, *ad infinitum,* as often as the matter should be tried and a judgment rendered. Where, if the statute allows an action to be brought to set aside any judgment upon the naked allegation of perjury, will be the end of litigation? When will controversies between litigious parties be finally determined? If the statute permits controversies to be in that manner perpetually kept open, it is certainly a very mischievous one. We cannot think the legislature intended to go that length."

Except a very few, not well-considered cases here and there, we might call the roll of the state and federal courts in support of the foregoing. My brethren confess a conflict of au-

thority, but fail to confess the very meager and illogical character of the adjudications out of harmony with what we have seen to exist, and fail to confess that the *Stowell Case,* as to the particular subject in hand, stands alone in this court, and fail to confess that in most of the cases where it has been cited, in this and other courts, reference to which is made in the court's opinion, substantially all the references are to situations falling within the remediable class, not such as we now have.

As indicated, I have made reference to substantially all the cases in this court. I will now refer to three of the foreign citations as a type of all. *Jewett v. Dringer,* 31 N. J. Eq. 586. The sole question was whether the court of original jurisdiction could entertain a bill to review a decree entered upon a *remittitur* from the supreme court, and it was held not. The court, incidentally, said that it could entertain a bill to avoid a judgment entered therein and procured by fraud, but what the court had in mind by the term "fraud" is not suggested. Reference to other cases in that court will easily show that mere perjured testimony, given in obtaining the judgment, was not thought of. The case has not, as I view it, the remotest bearing on the situation now under treatment.

In *Moore v. Parker,* 25 Iowa, 355, the action was for relief from fraud *aliunde* the trial, facts extrinsic, within the rule we have stated. As in *Jewett v. Dringer, supra,* no such thing as false testimony in obtaining the judgment is suggested as a proper ground for relief. The same is true of *Galena & S. W. R. Co. v. Ennor,* 116 Ill. 55, 4 N. E. 762. On the subject now in hand the court said:

"It cannot be allowed as a ground for setting aside a judgment, that there was false testimony given on the trial, or false assertions as to liability, previously made. If this were admitted there would be little stability in judgments."

Wherein do such authorities support the doctrine of the *Stowell Case?* If they have any bearing thereon I am en-

tirely unable to discover it. A multitude of authorities such as my brethren seem to think point the opinion might be added to the few cited.

We will now return to the *Stowell Case,* briefly, for the purpose of showing that the cases therein cited and upon which it was grounded do not support it, and then show that the true doctrine above indicated has been adopted, substantially universally, and then that the early rule promulgated here has been abandoned.

The first case cited in the *Stowell Case* is *Foster v. Wood,* 6 Johns. Ch. 86. It is sufficient to say as to that, relief on the ground of perjury was not sought nor mentioned; only the general principle was recognized that relief from a judgment secured by fraud may be obtained.

The next case is *Merritt v. Baldwin,* 6 Wis. 439. There the plaintiff fraudulently took advantage of the absence of the defendant to obtain his judgment.

The next is *Huebschman v. Baker,* 7 Wis. 542. The relief was granted from the result of neglect of the attorney, whom defendant had a right to rely on to protect his interest and who wholly failed to do so, allowing judgment to go by default.

The last is *Ableman v. Roth,* 12 Wis. 81. The relief was sought because the plaintiff brought the case to trial in breach of a verbal agreement for its postponement and thereby obtained the judgment. This ends the chapter, and it will be easily seen how very foreign the citations are from the doctrine grounded thereon. In every case the fraud claimed was plainly extrinsic. It did not have any bearing whatever on the subject of perjury in obtaining the judgment.

Turning to the citations of the learned counsel, who so distinguished themselves by obtaining promulgation of the troublesome doctrine, we find a very interesting situation.

*Emerson v. Udall,* 13 Vt. 477, was relied on and, perhaps, influenced the court. REDFIELD, Justice, merely suggested

that in no event could the presentation of false testimony or suppression of truth give cause for relief unless it was wilful, and it was suggested that even then it was questionable whether a court of equity could give relief or not. It should be noted in this connection that the court was not dealing with the solemn adjudications of a judicial tribunal, but with an award of arbitrators. Whatever uncertainty there was at that time, as to the state of the law as regards the precise question to which the case was cited, was solved, later, in *Camp v. Ward,* 69 Vt. 286, 37 Atl. 747, where the court said, most distinctly, that perjury is not a sufficient ground for enjoining a judgment; that fraud must be collateral, and that perjury in the action is not such. The further citations did not add anything of value for the court to have acted upon.

On the other side counsel contended that "a judgment will not be enjoined in . . . equity upon the ground that a witness upon whose testimony the judgment was obtained was mistaken or wilfully swore falsely"—citing *Smith v. Lowry,* 1 Johns. Ch. 320. There the court was very pronounced on the subject as to the precise doctrine for which I contend. The gist of the decision is thus stated in the syllabus:

"An injunction will not be granted to stay proceedings at law, on a judgment, on the ground that the defendant at law was prevented, by public business, from making due preparations for, and attending at, the trial; and that plaintiff had, on the evidence of one witness, whom he had suborned to swear falsely, recovered a verdict for a much larger sum in damages than he was justly entitled to; and that the supreme court had refused to grant a new trial in the cause."

Some quite extreme English cases are referred to in the opinion, somewhat out of harmony with the court's conclusion, with the remark that "this doctrine seems to be overruled, on the broad ground that there must be an end of litigation; and it may be questioned whether equity would now interfere, even in this case, after the refusal by a court of law."

That case was decided in the formative stage of equity ju-

risprudence in this country.   Later the New York court left
no manner of doubt as to its position. ⁖

In *Paterson v. Bangs,* 9 Paige, 627, the grounds of relief .
were limited to situations where the party was "prevented by
fraud or accident without any fraud or negligence in himself
or his agent."   Note the word "prevented" which points to
extrinsic circumstances as we have seen.   In *Mayor, etc. v.
Brady,* 115 N. Y. 599, 22 N. E. 237, it was said, referring to
previous adjudications, that the fraud which will vitiate a
judgment is fraud practiced in the procurement or concoction
of the judgment itself, by which the defendant was prevented
from availing himself of his defense, as distinguished from
mere false proof.   In the case referred to, the federal rule,
which was adverted to by the Vermont court and which par-
ticular attention will be given to hereafter, was unqualifiedly
adopted.   In *Ross v. Wood,* 70 N. Y. 8, the situation was
more aggravated than the one claimed to exist here.   Yet it
was held not to present a case of fraud extrinsic, or as the
court put it, "in the very concoction or procuring of the judg-
ment or decree."   The gist of the decision is well stated in
the syllabus, thus:

"An equitable action cannot be maintained to annul a judg-
ment rendered upon conflicting evidence, upon the ground
that the opposite party and his witnesses conspired together
to obtain a judgment by perjury and fraud, and that the
judgment was obtained by false evidence."

Many other New York cases might be referred to of like
effect showing that the rule in that state is directly opposite
to what was seemingly supposed in the *Stowell Case.*

Now we must turn for a moment to the federal rule
adopted in substantially all the cases decided since it was pro-
mulgated, and by all the text-writers.

The dominant principle was first phrased by Chief Justice
MARSHALL in *Marine Ins. Co. v. Hodgson,* 7 Cranch, 332.
It was said, without attempt to define precise limitations, that
"any fact which clearly proves it to be against conscience to
execute a judgment, and of which the injured party could not

have availed himself in a court of law; or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

It will be seen, at once, that the evident attempt to state these general principles in the *Stowell Case* expanded them very greatly and, in view of the authorities cited, rather inconsiderately. The precise nature of the fraud contemplated by the rule was left quite uncertain till *U. S. v. Throckmorton,* 98 U. S. 61. There for the first time, what is meant by fraud in the procurement of a judgment was elucidated so as to entirely eliminate cases of this sort and so illustrated as to show, clearly, that only matters extrinsic are subjects of relievable fraud, that no one need now go astray. It should be noted, in passing, that *Smith v. Lowry,* 1 Johns. Ch. 320, cited to the attention of this court in the *Stowell Case,* but seemingly overlooked in making up the decision, was referred to as one of the controlling authorities. Relief from the judgment was sought upon the ground that it was obtained by using a fraudulently antedated paper, material to the controversy, and depositions of perjured witnesses. Relief was denied, the court saying:

"Fraud vitiates the most solemn contracts, documents, and even judgments. There is also no question that many rights originally founded in fraud become . . . by the protection which the law throws around rights once established by formal judicial proceedings . . . no longer open to inquiry in the usual and ordinary methods. . . .

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent"—Now note the illustrations: "as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his de-

feat; or where the attorney regularly employed corruptly sells out his client's interest to the other side," or similar situations of fraud practiced upon the party seeking relief *preventing* him from making his defense, "a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing."

"On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence." [*U. S. v. Throckmorton,* 98 U. S. 64–66.]

*Greene v. Greene,* 2 Gray, 361, opinion by SHAW, C. J., was referred to for the best discussion of the whole subject extant. The case involved the right to relief from a judgment obtained by perjury. Relief was denied, the learned justice saying:

"The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted."

The federal supreme court concluded its exhaustive discussion by formulation of this rule, now thirty years old, and familiar to all courts as a classic:

"The acts for which a court of equity will set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered."

The importance of adhering closely to the rule was thus pictured:

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, . . . would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

If we were to take time to indicate with appropriate citations the multitude of cases in the courts of this country where that rule and logic has been adopted, the language of the federal court being quoted, and it being expressly pointed out that perjury in the case is matter intrinsic, not collateral, and so not within the rule as to relievability, this opinion would be extended to a very great length. Pages would be occupied with mere titles of cases and where they may be found. The following are a few of the most striking of such cases, directly on the point: *Maryland S. Co. v. Marney,* 91 Md. 360, 46 Atl. 1077, where not only perjury but subornation of perjury was held not to be a ground for relief. To the same effect are *Gray v. Barton,* 62 Mich. 197, 28 N. W. 813; *Pico v. Cohn,* 91 Cal. 129, 25 Pac. 970, 27 Pac. 537; *Woodruff v. Johnston,* 19 N. Y. Supp. 861; *Demerit v. Lyford,* 27 N. H. 541; *Kretschmar v. Ruprecht,* 230 Ill. 492, 82 N. E. 836; *Graves v. Graves,* 132 Iowa, 199, 109 N. W. 707; *Hilton v. Guyot,* 159 U. S. 113, 16 Sup. Ct. 139; *Mahoney v. State Ins. Co.* 133 Iowa, 570, 110 N. W. 1041; *Richards v. Moran,* 137 Iowa, 220, 114 N. W. 1035; *Hass v. Billings,* 42 Minn. 63, 43 N. W. 797; *Hamilton v. McLean,* 139 Mo. 678, 41 S. W. 224; *U. S. v. Flint,* 4 Sawy. 42, 25 Fed. Cas. No. 15,121; *U. S. v. Gleeson,* 90 Fed. 778; *U. S. v. White,* 9 Sawy. 125, 17 Fed. 561; *Cotzhausen v. Kerting,* 29 Fed. 821; *Ritchie v. McMullen,* 79 Fed. 522; *Fealey v. Fealey,* 104 Cal. 354, 38 Pac. 49; *Hanley v. Hanley,* 114 Cal. 690, 46 Pac. 736; *Pepin v. Lautman,* 28 Ind. App. 74, 62 N. E. 60; *Steen v. March,* 132 Cal. 616, 64 Pac. 994; *Gusman v. Hearsey,* 28 La. Ann. 709; *Verplanck v. Van Buren,* 11 Hun, 328; *Wabash R. Co. v. Mirrielees,* 182 Mo. 126, 81 S. W. 437; *Neun v. Blackstone B. & L. Asso.* 149 Mo. 74, 50 S. W. 436; *Friese v. Hummel,* 26 Oreg. 145, 37 Pac. 458; *Codde v. Mahiat,* 109 Mich. 186, 66 N. W. 1093; *Ames v. Snider,* 55 Ill. 498; *Adams v. Secor,* 6 Kan. 542. Later Kansas cases depend on statutory change of the rule.

The treatment by my brethren of *Pico v. Cohn, supra,* and

similar cases, as if such cases recognize fraud of the nature here involved to be sufficient to warrant such an action as this, because they hold "that in some cases a former judgment may be annulled for fraud," and the statement by my brethren that just what is included in the term "extrinsic fraud" is not easily determinable, as if the uncertainty gives range to include perjured testimony in the action,—seems very weak support since in the California case referred to, and many that followed it, and the very cases suggesting the uncertainty referred to, all agree that "fraud extrinsic" does not include perjury in the action, but unquestionably excludes it.

Now a word on the suggestion by my brethren that *Marshall v. Holmes,* 141 U. S. 589, 12 Sup. Ct. 62, where relief was held proper upon the ground that the judgment sought to be set aside was procured by means of plaintiff therein leading the court to believe that he contracted with the defendant through one Boyd, and that he was duly authorized in that regard in writing,—by producing a letter purporting to have been written by the plaintiff to that effect, which was a forgery, modified the *Throckmorton* rule.    The *Throckmorton Case* was only incidentally referred to, with nothing to indicate, expressly, modification of it in any way.    However, the case bears all earmarks of having been decided without full appreciation of the situation the court had created.    It was probably supposed that the forgery of the instrument, and use of it to obtain the contract, ostensibly on the credit of the plaintiff, not the use of it upon the trial, was the real ground of the mischief and so was fraud extrinsic.    It cannot be thought for a moment that any infraction of the rule—which had existed without question for some thirteen years and become the law of the land in all federal and all state courts— was intended.    That is rendered unmistakable from the fact that in many cases decided since 1891, when the adjudication in question occurred, the *Throckmorton* rule is found vindicated in all its integrity, particularly as to the very point in controversy in this case.    *U. S. v. Gleeson,* 90 Fed. 778; *Hil-*

*ton v. Guyot,* 159 U. S. 113, 207, 16 Sup. Ct. 139; *Pittsburgh, C., C. & St. L. R. Co. v. Keokuk & H. B. Co.* 107 Fed. 781.

True, after the *Marshall Case* a controversy arose as to whether the *Throckmorton* rule, in some of its aspects, had not been modified by the later case, creating an irreconcilable conflict. The supreme court was appealed to in *Graver v. Faurot,* 76 Fed. 257, to settle the matter, but did not reach the supposed difficulty. In *Bailey v. Sundberg,* 145 U. S. 628, 12 Sup. Ct. 239, and again in the same case, 154 U. S. 494, 14 Sup. Ct. 1142, an appeal was made to the supreme court for a writ of *certiorari* to review the judgment upon the ground that the lower court committed a serious error of law in adhering to the *Throckmorton* rule instead of the supposed infraction of it. Both applications were denied. It was expressly affirmed in *Hilton v. Guyot, supra,* in 1894. It was said in *U. S. v. Gleeson, supra,* not to have been displaced at all by *Marshall v. Holmes, supra,* and for more than ten years it has been regarded as the unquestionable rule for the federal and state courts. In view of this history, I submit that the decision here cannot be justified upon the ground that the doctrine of the *Throckmorton Case* has been at all disturbed by the court which declared it.

We now turn to our own decisions and show that the rule so firmly established elsewhere has been unqualifiedly adopted here, in place of the rule in *Stowell v. Eldred,* 26 Wis. 504.

In *Uecker v. Thiedt,* 133 Wis. 148, 113 N. W. 447, decided so recently as to be fresh in memory of us all, the court, speaking by Mr. Justice DODGE, said:

"Fraud which can be made the basis of an attack upon a solemn judgment of a court of record must have directly induced the rendition of the judgment, not merely have induced or brought about a condition upon the real existence of which the court acted as a basis of its decree,"

citing *U. S. v. Throckmorton, supra,* and other cases to which I have referred. What was left out to make an unmistakable

repudiation of the *Stowell Case* except the addition, almost necessarily to be inferred, *Stowell v. Eldred,* 26 Wis. 504, overruled. The two cannot stand together. How can one say there is nothing said in the later case in any way to discredit the early one merely because the facts of the two were different, since in both the court intended to state a rule of general application? I leave the reader of our opinions to answer this, each for himself. True, there was no fraud in the *Uecker Case,* as it turned out. True, the court said: "There was nothing in the case showing that the judgment attacked was inequitable or unfair." But both fraud and inequity were claimed and it *was to the claim* the court addressed the rule the same as in the *Stowell Case.* The fact that in the one it stood the test and in the other it did not, since the measuring tests radically differ, does not make the cases harmonize by the logic I must apply.

Later in *Scheer v. Ulrich,* 133 Wis. 311, 113 N. W. 661, to which my brethren do not refer, the *Throckmorton* rule was again cited with added definiteness, reaffirming the previous approval thereof. That would seem to firmly entrench it in our jurisprudence. I will not say more excepting to assert that one or the other of the rules must give way and that the inconsiderate promulgation in the *Stowell Case* must be that one if we are to be both in harmony with ourselves and with the great weight of authority elsewhere.

In passing I should make this further brief reference to cases in my brethren's opinion supposed to support the decision. In *Nelson v. First Nat. Bank,* 70 Fed. 526, relief on the ground of perjury was denied, but such relief was held competent under some circumstances. It was a Minnesota case, obviously governed by the Minnesota statute providing for such relief, which statute has been so restricted, as we have seen, as not to materially avoid the *Throckmorton* rule.

*Moore v. Parker,* 25 Iowa, 355, we have referred to. If it supports the decision here, and I think it does not at all, there

is a statute on the subject of relief on the ground of fraud, and, moreover, the subject was set at rest in *Graves v. Graves,* 132 Iowa, 199, 109 N. W. 707, where all previous adjudications were reviewed and the court definitely adopted the *Throckmorton* rule, saying that perjury in obtaining a judgment is not a sufficient ground for an action of this sort.

*Galena & S. W. R. Co. v. Ennor,* 116 Ill. 55, 4 N. E. 762, as we have seen, is directly opposed instead of in favor of the position now adopted.

In *Maddox v. Apperson,* 14 Lea (82 Tenn.) 596, the case did not go on the question here at issue. The *Throckmorton* rule in its general aspects was approved, but it was said that if the term "extrinsic fraud," as distinguished from "intrinsic," would bar relief where a judgment is obtained by suppressing evidence which the prevailing party by his relation to the adverse party is bound to disclose, fiduciary relations of some sort being suggested, the court would not go that far.

*Moore v. Gulley,* 144 N. C. 81, 56 S. E. 681, was governed by a very ancient rule in North Carolina that equity would relieve from a judgment obtained by perjured testimony, conditioned upon the perjury being first established by a due prosecution and conviction. The North Carolina doctrine is recognized in the books as peculiar to that state. *Woodruff v. Johnston,* 19 N. Y. Supp. 861, cited to the point that relief such as is now sought is proper, the perjury being conclusively proved as by a precedent conviction, directly holds, as we have seen, that such an action cannot be maintained at all. The incidental observation, which attracted my brethren's attention, that there must be a conviction before a new trial can be granted on the ground of perjury, had reference to *Holtz v. Schmidt,* 44 N. Y. Super. Ct. 327, where there was a motion in the action for a new trial, not an equitable action to avoid the judgment. As to the latter, as we have seen, it is said perjury is not a ground of action at all.

*Bloss v. Hull,* 27 W. Va. 503, as I understand it, is of the

same nature. . Other cases cited concluding the list are either under special statutes or do not refer to such a situation as we have here, or have been displaced by later decisions.

I will not pursue the matter further. If there is any substantial support for the adherence to the early decision in *Stowell v. Eldred, supra,* I am unable to find it.

Thus, it seems the court after twice, just recently, having adopted the *Throckmorton* rule, has put aside the opportunity to say, directly, what is so plainly said inferentially, that the early case is overruled. No other case stands at all in the way of bringing this court into full harmony with the judicial world.

I personally reassert the rule with as much force as, standing alone, I can, so well stated by Mr. Justice Dodge for the court in *Uecker v. Thiedt, supra:* Fraud to be the basis of attack upon a solemn judgment of a court must be extrinsic and have directly induced the judgment. Mere perjured testimony creating a fictitious condition upon which the court acted as a real one, resulting in the judgment, is not sufficient.

That rule might, now and then, render a wrong remediless, but, as the learned federal court and many of the state courts have said, the contrary rule is fraught with great mischiefs, for it would render strife by means of judicial instrumentalities endless. Hardly a hotly contested action is tried but that the defeated party honestly believes his defeat is attributable to perjured testimony on the other side. In that situation and with such a rule as I contend against it would be possible for contest to follow contest, as the Minnesota court aptly said, *"ad infinitum,* as often as the matter should be tried and a judgment rendered."

The foregoing no more infracts the rule, "There is no wrong without a remedy," than, as said by Mr. Justice Shaw, it does the one that "fraud vitiates everything." As in the latter the presumed infallibility of judgments, after ordinary litigation has run its course, displaces the maxim, by

estopping the party from setting up the fraud, closing the mouth on one side and the ear on the other, so it makes right, in contemplation of law, what independently of it, from a mere ethical standpoint, is wrong.    As has been said, "There is no wrong without a remedy," but there is no wrong, in legal contemplation, as to that upon which the law's instrumentalities have set their seal, in the ultimate, of right.    *Judicia sunt tanquam juris dicta, et pro veritate accipiuntur.*

The findings of the trial court should be approved, but the judgment reversed because the proved perjury under the circumstances is not relievable in the manner sought.

Upon a motion by the respondent for a rehearing or that the mandate be modified so as to direct a trial by jury of the question of the rescission and cancellation of the contract of October, 1887, there was a brief for the appellant by *Sanborn, Lamoreux & Pray* and *H. B. Walmsley,* attorneys, and *Burr W. Jones,* of counsel, and a brief for the respondent by *Richard Sleight,* attorney, *James G. Flanders,* of counsel, and *Geo. F. Merrill,* guardian *ad litem* for the infant heirs.

The motion was denied March 9, 1909.