SAMUEL HOLMES

*v.*

LEMUEL STATELER *et al.*

| 57 | 209 |
| 58a | 334 |

| 57 | 209 |
| 80a | 254 |

| 57 | 209 |
| 201 | ³164 |

| 57 | 209 |
| 214 | ³392 |

1. CHANCERY—*jurisdiction of—to grant new trials at law.* It is only in cases that commend themselves strongly to equitable relief, that a court of equity will interpose to vacate a judgment at law; and though the power of the chancellor to control the courts of general jurisdiction, to set aside, modify and otherwise interfere with judgments at law, is now conceded and fully established, yet it is upon fixed and determinate rules alone that the jurisdiction will be exercised.

2. Judgments at law will not be vacated capriciously or as a mere matter of discretion, nor because the chancellor would, on the evidence heard in the suit at law, have arrived at a different conclusion from that reached by the jury.

3. Where a party has been brought into a court of law, and has had an opportunity of interposing a defense, and fails to do so, the repose of society requires that by the judgment then rendered the litigation should there end and the controversy terminate, unless by accident, mistake or fraud, the party has been prevented from interposing his defense, establishing his

14—57TH ILL.

claim. And even though the judgment is manifestly wrong in law and in fact, or when allowing it to stand will compel the payment of a debt the defendant does not owe, unless it appears it was obtained by fraud or was the result of accident or mistake, relief in equity will not be granted.

4. Where, however, a party, after making every effort in his power to discover evidence, fails, upon its being afterwards discovered, a court of equity will treat this as an accident, and will, when satisfied that such evidence would have produced a different result, and that the judgment thus obtained is unjust and should not be paid, grant a new trial; but all these requirements must concur before it will interpose its power to afford relief. It must appear that the judgment is manifestly wrong; that the evidence has come to the knowledge of the complainant after the trial; that he had exhausted all reasonable means and efforts to discover it before the trial, and that it would, without a reasonable doubt, when introduced on a new trial produce a different result—it is not enough that the newly discovered evidence only renders it probable that a different result would follow.

5. The newly discovered evidence, to be availing, must not be cumulative merely

6. Injunction—*assessment of damages on dissolution—continuance.* The proceeding by the court on the dissolution of an injunction, upon the party claiming damages by reason of such injunction suggesting in writing, the nature and amount thereof, to hear evidence and assess the damages is not a new proceeding, but follows as a part of the original proceeding, upon the dismissal of the bill and dissolution of the injunction; and if either party desire a continuance, he should show grounds for it in the usual mode, by affidavit.

7. Same—*trial by jury.* In such proceeding it is discretionary with the court whether there shall be a trial by jury.

Appeal from the Circuit Court of Peoria county; the Hon. S. D. Puterbaugh, Judge, presiding.

The opinion sufficiently states the case.

Messrs. Wead & Jack, for the appellant.

Messrs. Richmond & Burns, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

This was a suit in equity, brought by appellant in the Marshall Circuit Court, against appellees, for the purpose of

obtaining a new trial at law. The venue was subsequently changed to Peoria county. The bill alleges that the defendant Stateler, in February, 1858, obtained a judgment at law against complainant, for $400, which he claims is unjust and wrong; that the verdict was procured by fraud, perjury and forgery; that the complainant was guilty of no negligence in defending the suit; that it was out of his power to successfully defeat it upon the trial thereof; and that he can, by means of evidence not then known to him, and then beyond his reach, and out of his power to obtain on that trial, reverse the judgment, if a new trial be ordered.

Appellees answered, admitting the proceeding in the suit at law, as set up in appellant's bill, but denying all the material allegations upon which relief was prayed. The evidence on the former trial and proofs since taken to sustain the bill, were heard on the trial, when the court below dissolved the injunction and dismissed the bill. Thereupon appellees filed suggestions of damages from the wrongfully suing out of the injunction, and the court rendered a decree for two hundred dollars damages. The case is brought to this court on appeal, and errors assigned on the record.

It is only in cases which commend themselves strongly to equitable relief, that the chancellor feels at liberty to interpose his power to vacate the judgment of a court of law. It was after a long and bitter struggle, that the common law judges yielded and conceded even the power of the chancellor to control the courts of general jurisdiction, or to set aside, modify, or otherwise interfere with judgments at law. But the power is now conceded and fully established. Yet it is upon fixed and determinate rules alone, that the jurisdiction will be exercised. It will not be done capriciously or as a mere matter of discretion, nor because the chancellor would, on the evidence heard in the suit at law, have arrived at a different conclusion from that reached by the jury. And the court will not usually interpose to grant a new trial unless there has been accident, mistake or fraud, which has produced the result. *Buckmaster*

v. *Grundy*, 3 Gilm. 626; *Hinrichsen* v. *Van Winkle*, 27 Ill. 334; *How* v. *Mortell*, 28 Ill. 478. In the second of these cases it was said, a party can not ask for relief in equity on the ground that he has failed or omitted to make a defense at law, even when the judgment is manifestly wrong in law and in fact, or where by allowing it to stand, will compel the payment of a debt the defendant does not owe, unless it appears that it was obtained by fraud, or was the result of accident or mistake. See, also, *The State Bank* v. *Stanton*, 2 Gilm. 352.

Where a party has been brought into court and has had an opportunity of interposing a defense and fails to do so, the repose of society requires, that by the judgment then rendered, the litigation should then end and the controversy terminate, unless, by accident, mistake or fraud, the party has been prevented from interposing his defense or establishing his claim.

Where a party, however, after making every effort in his power to discover evidence fails, upon its being afterwards discovered, courts of equity treat this as an accident, and will, when satisfied that such evidence would have produced a different result, and that the judgment thus obtained is unjust and should not be paid, grant a new trial, but all these requirements must concur before it will interpose its power to afford relief. It must appear that the judgment is manifestly wrong; that the evidence has come to the knowledge of complainant after the trial; that he had exhausted all reasonable means and efforts to discover it before the trial, and that it would, when introduced on a new trial, produce a different result.

In this case John B. Stateler's deposition was taken about four years before the trial, to say nothing of the two previously taken, one of which was near two years previous to the last. By these depositions, appellant was fully apprised that the witness would swear to what is now claimed to be false, and which it is proposed to contradict. This was a long period of time within which to discover evidence to disprove what he knew was untrue, and this, too, when the name of the witness was given, by whom he proposes to prove its falsity, and not only so,

but the witness distinctly states in his deposition that the last time he saw Evans he was on his way to Oregon. Appellant does not seem to have been very active during all this time in his efforts to learn where the witness resided. He, it seems, procured two of his neighbors to write for him to Iowa, Ohio and California, to learn his residence. They seem to have written to his relations or friends, but the time when, or how often, does not very definitely appear. He does not seem to have employed an attorney or agent in Oregon to inquire for his residence. Such an agent, at the seat of government, could readily, through the postmasters in that State, have learned his place of residence, or had information been asked through the newspapers of the State, the search would in all probability have proved successful. Other means that will readily suggest themselves, could have been employed, with moderate expense, that would probably have discovered the desired information. We, therefore, are of opinion that appellant has failed to show the necessary diligence to entitle him to the relief sought.

Again, the newly discovered evidence must not be cumulative. In this case, appellant introduced, as we see from the bill of exceptions, when the trial was had at law, the evidence of a number of witnesses and the statements made by appellees, to contradict John B. Stateler's evidence in reference to the loan. And all that can be claimed for the evidence of Evans, is, that it would contradict John B. Stateler on that point. If, then, it should be admitted on another trial, it would only add to or accumulate the evidence on that point.

An examination of the affidavit of Evans, and the deposition of Stateler, do not show an absolute contradiction. Stateler says that Evans was present when his brother loaned the money to appellant. Evans says he did not see the money loaned, nor did he see appellant. It will be observed that Stateler nowhere says that Evans saw the money loaned, or saw appellant. Evans might have been present and neither have seen the money loaned nor have seen appellant. It is not pretended he was not in the city of Sacramento and in

214        HOLMES *v.* STATELER *et al.*        [Sept. T.,

Opinion of the Court.

daily intercourse with the Statelers at the time fixed by Stateler when the money was loaned. This being so, we can not say that another jury would arrive at a different conclusion, and unless we could believe they would, without reasonable doubt, a new trial should not be granted. The evidence would no doubt be conflicting, and it would be for a jury to consider it and determine on which side the weight inclined. Before a new trial will be granted in equity, it should appear, with reasonable certainty, that a different verdict would result. It is not in every case where new evidence is discovered, or when such evidence only renders it probable that the jury would find a different verdict, that the relief should be granted. To do so, would authorize it in all doubtful cases, where courts of law always refuse to grant a new trial. On this ground we are of opinion that a new trial should not be granted.

The fact proposed to be disproved by Evans, is in its nature collateral. If the money was loaned, what does it matter whether Evans was or was not present? If loaned, as claimed, appellant should pay it whether Evans saw it loaned or not, as that fact would not affect its justice. The evidence is not direct to the issue in the case.

It is again insisted that the court below erred in refusing to continue the suggestions for damages, on the motion of appellant. We do not understand the statute as intending to give, as a matter of right, a continuance on the suggestions, to either party. This proceeding follows as a part of the original proceeding, upon the dismissal of the bill and dissolution of the injunction. It is not a new proceeding. If either party desire a continuance, he should show grounds for it in the usual mode, by affidavit.

Nor is the objection well taken, that a jury trial was refused. It was a part of a proceeding in chancery, where trial by jury is not a matter of right. It is only discretionary with the chancellor, whether there shall be formed an issue of fact to be tried by a jury. It is not an answer to say that it involves the rendition of a decree for damages. This court and the circuit

courts have rendered judgments for damages on the dismissal of appeals, for more than a quarter of a century, without the right being questioned. And on the dissolution of an injunction, restraining the execution of a judgment, such damages have been awarded under the statute for a much longer period without the right being questioned, so far as our observation has extended.

But appellant certainly waived all right to question the action of the court in that regard, when he consented that the decree should be rendered for two hundred dollars. That agreement amounted to a confession of the decree for that sum. We perceive no error in this record, and the decree is therefore affirmed.

*Decree affirmed.*