## Decatur Coal Company, Appellant, v. August Hackert, Jr., et al., Appellees.

JUDGMENTS—*what essential to interference by court of equity.* Before a court of equity will decree a judgment as null and void and award a new trial upon the ground that such judgment was obtained by perjured testimony, it must satisfactorily appear .that the true facts when introduced on a new trial would produce a different result.

Bill in chancery. Appeal from the Circuit Court of Macon county;

the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the November term, 1910. Affirmed. Opinion filed May 26, 1911.

WHITLEY & FITZGERALD, for appellant; R. J. FOLONIE, of counsel.

JACK & DECK and REDMON & HOGAN, for appellees.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal from a decree sustaining a general demurrer to a bill in chancery dismissing the same for want of equity, after the complainant had elected to abide thereby. The bill, in which August Hackert, Jr., and B. A. McGorray, sheriff of Macon county, are named defendants, prays for relief against a judgment at law alleged to have been obtained by Hackert against the complainant, through the perjury of a suborned witness. It prays that execution upon the judgment be enjoined, the judgment decreed to be null and void, and a new trial at law ordered. The material averments of the bill, which must be taken as true, are the following:

That August Hackert, Jr., brought an action in the Circuit Court of Macon county, against complainant, for personal injuries sustained by the said Hackert in complainant's coal mine; the declaration in said cause consisted of three counts, two of which charged complainant with a violation of the Mining Act in that it wilfully failed and neglected to provide the plaintiff, at his request, with sufficient props and cap-pieces to support the roof of the mine at the place where he was at work at the time of his injuries, and another that complainant violated its common law duty to use reasonable care to provide its employes with a reasonably safe place in which to work, in that it charged complainant with providing the said Hackert with rotten and decayed props; that upon a trial of the cause at the October term, 1907, of said court, the

evidence of complainant shows that the injuries to Hackert were caused by a weak condition of the roof of the mine at the place where the injuries occurred, due to the existence in said place of "horsebacks" in the roof of the said mine; that the said condition was a defect which could not at that place be guarded against by propping, and was therefore one of the dangers or risks assumed by the plaintiff; that a verdict of not guilty was returned, and thereafter, upon motion of Hackert, a new trial of said cause was granted, the sole ground therefor being that the court had given on behalf of the defendant an erroneous instruction.

The bill further alleges that thereafter at the January term, 1908, of said court, said cause was again tried and a verdict and judgment had for the plaintiff in the sum of $3,135; that said judgment was upon appeal affirmed by the Appellate Court for the third district, and then appealed to the Supreme Court, where it was again affirmed, the Supreme Court holding to the effect that some of the props furnished by the defendant to the plaintiff for the place in which he was working when the accident occurred, were unsound, rotten and decayed, and that the defendant was chargeable with notice of their condition, which evidence tended to support the common law count of the declaration; that there was no evidence admitted upon the second trial tending to show any notice or knowledge of the complainant that said props were insufficient or defective, except the testimony of one Thomas J. Coker, called by the plaintiff, who testified that about six out of every ten props in the pile from which the props used by said Hackert were secured, were worm-eaten and that about three or four out of every ten props were rotten, a transcript of the evidence of said Coker being attached to the bill and made a part thereof.

It is further alleged that the only evidence upon

the second trial as to the condition of the props which broke, and which were claimed to have caused the injuries to said Hackert was that of August Hackert, Sr., who testified that the outside of such props appeared good, and that after they were broken he noticed that three of them were wormy on the inside, and further that the condition of said props could not be seen until after they were broken; that other than the testimony of said Coker, there was no evidence which could charge the complainant with any notice or knowledge that said props were defective. The bill alleged that the evidence of said Coker respecting the condition of said props was false and perjured, and that he was solicited and suborned by the said Hackert, by the promise to him of $50 in consideration of which said Coker agreed to and did testify falsely that the pile of props was, in the main, rotten, and that three or four out of every ten were rotten, and about six out of ten were worm-eaten. The facts respecting such conspiracy and perjury of the said Coker, and the subornation on the part of said Hackert, are set forth in an affidavit of said Coker, the original of which is attached to the bill and made a part thereof. The bill also charges that neither complainant nor its agents ever learned or suspected the perjury of said Coker, nor of the conspiracy between him and said Hackert or the subornation so practiced by said Hackert, until after said cause had been affirmed by the Supreme Court; that said Coker was the man in charge of the props stored and piled at the top of said mine, and that his false testimony in regard to their condition was the moving cause of the verdict for the plaintiff upon said common law count; that if the said Coker had truthfully testified to the true state of the facts, that the props were not unsound and rotten but were sound and strong as set forth in his said affidavit, a different verdict must have been returned in said cause; that

immediately upon learning of the said agreement and conspiracy between Hackert and Coker, complainant elicited from said Coker the true state of facts in regard to the said props as aforesaid, and that the said Coker thereupon, voluntarily and without compulsion on the part of complainant, made and signed the said affidavit; that complainant's agents and attorneys, in preparing for both of said trials of said cause, made a thorough and complete examination of the facts and circumstances of the case, interviewed all the witnesses whom they supposed would have knowledge of the matters in question and subpoenaed them to appear upon the trial, and diligently upon the trial sought to establish the truth by such witnesses; that at the time of the injury to the said Hackert the top-boss of complainant's mine was one John Fahay, and that the said Fahay had general charge and superintendence of the props and caps purchased by complainant and kept and stored at the top of the mine, and knew their condition at that time; that the first trial of this cause was had on December 5, 1907, that the said Fahay departed this life on December 9, 1907, and that during all of the first trial of said cause the said Fahay was confined to his bed from the illness of which he died; that it was therefore impossible for complainant to procure the testimony of the said Fahay at either of the said trials, and that if the said cause was tried again and the evidence in regard to the condition of said props was truly related to the jury, complainant believed that a verdict for the defendant would result.

The bill still further alleges that the judgment of the Supreme Court rested solely upon such false and fraudulent testimony of said Coker, but for which the Supreme Court would have reversed the judgments of the Appellate and Circuit courts and awarded a new trial; that Hackert had sued out an execution and placed the same in the hands of the defendant McGorray, sheriff of Macon county; that the complainant

had property within the county of much greater value than the amount of said execution, and that if not restrained the defendants would levy upon and sell the same, and thus work irreparable injury to complainant. The bill sets out the testimony of Coker upon the second trial, in the following language: "That said witness did upon said trial testify that about six out of every ten props in the pile from which the props were secured that were used by the plaintiff in said common law action, being the said August Hackert, Jr., were worm-eaten, and that about three or four out of every ten props were rotten." His affidavit, the original of which is attached to and made a part of the bill, so far as it relates to the condition of the props in question, is *verbatim* as follows: "Affiant says that in truth and in fact that there was but a few of the props worm-eaten and that in the main the props were strong and substantial and capable of doing the work and supporting the weight expected of them; and that all of said props were in the main well-seasoned and in good condition."

It is not averred in the bill that Coker would testify upon another trial to the facts above quoted from his affidavit. The bill alleges merely that "his false testimony in regard' to their condition was the moving cause of the verdict for the plaintiff upon said common law counts; that if the said Coker had testified truly, according to the true state of facts as set forth in his affidavit aforesaid, to-wit, that the props were not unsound and rotten but were sound and strong, a different verdict would have been returned in said cause." The averments that the false testimony of Coker was the moving cause of the verdict, that if he had testified truthfully a different verdict would have been returned, and that upon another trial if the evidence relating to the props was truthfully related a verdict for the defendant would result, are clearly conclusions of the pleader. The conclusions we

draw from the facts averred in the bill, do not coincide with those of counsel. The purport of the statement by Coker in his affidavit, as to the condition of the props, is that a less number or lesser proportion of them were worm-eaten and unsafe, than testified to by him upon the second trial; that while in the main they were strong and substantial, well-seasoned, in good condition and capable of supporting the weight expected of them, a few of said props were worm-eaten. It is not improbable that if Coker so testified upon another trial, the jury would nevertheless find that the fact that those employed by the company to handle and send props to the miners, were sending even a small number which were worm-eaten and defective, was a neglect of its duty to exercise reasonable care to furnish its miners with safe and sufficient props. Neither are we satisfied that the fact that Coker testified that a greater number of props were defective than actually were, was the moving cause of the verdict returned, although it may have been a contributing cause.

In Boring v. Ott, 138 Wis. 260, 119 N. W. Rep. 865, it is said: "It is established by all the authorities that a very high degree of proof in such cases is required, many cases holding that there must be a conviction for perjury before equity will interfere, while others hold that it must be established beyond a reasonable doubt, either by admission, documentary evidence, or by such other proof as to leave no reasonable ground for doubt." (Citing authorities.) "The reason of the rule is obvious as laid down in the cases. If a litigant were permitted to restrain the enforcement of a judgment regularly entered after a trial in a court of law upon conflicting or uncertain evidence as to whether perjury were committed in securing the judgment, it is easy to see what interminable litigation such a rule would invite. Courts of equity, therefore, should not restrain the execution of judgments, except

where the ground for interference is established beyond all reasonable controversy by evidence clear, convincing and satisfactory. Linde v. Gudden, 109 Wis. 326. All the authorities agree that evidence of the highest dignity is necessary to justify the interference of equity in such cases."

"To warrant a court of equity in enjoining a judgment at law and awarding a new trial in the action because of newly discovered evidence, substantially the same grounds must be shown as are necessary to justify a court of law in awarding a new trial. In other words, it must satisfactorily appear that the judgment is manifestly wrong;   *   *   *   And the inquiry is whether, if the judgment were set aside and a new trial awarded complainant, upon the showing made, would be entitled to a recovery in the action at law." 1 High Inj. 101.

In Holmes v. Stateler, 57 Ill. 209, the court held: "It is only in cases which commend themselves strongly to equitable relief, that the chancellor feels at liberty to interpose his power to vacate the judgment of a court of law.   *   *   *   Before a new trial will be granted in equity, it should appear with reasonable certainty, that a different verdict would result. It is not in every case where new evidence is discovered, or when such evidence only renders it probable that the jury would find a different verdict, that the relief should be granted."

Waiving the questions as to the right of the complainant to maintain a bill of the present character, and whether the complainant had exhausted all reasonable means and effort to discover the alleged conspiracy and subornation before the trial, we are unable to arrive at the conclusion that the true facts when introduced on a new trial would produce a different result.

The decree of the Circuit Court was proper and is affirmed.

*Affirmed.*